Morphy, J.
Richard C. Stockton opposed the homologation *400 of a provisional tableau of distribution filed in this case, claiming to be put down on it as a mortgage creditor of the insolvent. The circumstances under which he claims are these : In December, 1835, John S. Alexander, for the accommodation of Walter Byrnes, drew upon the latter, in favor of L. A. Collier, a bill of exchange for $10,616 64, payable three years after date. This bill was accepted, but not paid by Byrnes at its maturity. Shortly after the protest of the bill, Byrnes, with a view to secure Alex-* ander and save him harmless from any loss he might sustain in consequence of its non-payment, gave him a mortgage on his plantation and slaves on lake St. John, in the parish of Concor-dia. On the 9th of April, 1839, the plantation and' slaves of Byrnes were seized and sold under divers executions, and, at the sheriff’s sale, Collier, the insolvent, became the purchaser of the property for $71,000. It was burthened with mortgages to an amount of about $65,000, exclusive of, and having a preference over, that for $10,616 64, executed in favor of Alexander. With the exception of the amount necessary to satisfy the writs under which the property was sold, the purchaser retained in his hands the whole price. On the 5th of September, 1843, Collier, who had recovered judgments against Byrnes and Alexander on the protested bill of exchange for $10,616 64, transferred them to the opponent, R. C. Stockton. On the 4th of January, 1844, the latter was subrogated by Alexander to all his rights of mortgage on the plantation and slaves in the possession of the insolvent, in consideration of a release granted to him by Stockton as owner of the judgment recovered against him by Collier. Among the mortgages existing on the property of Byrnes at the date of Collier’s purchase, there was one given to secure a debt of $12,000 in favor of Wm. Primm, for which Byrnes had executed several promissory notes. Of these, one for $1800 became due on the 15th of January, 1837, and one for $4800 fell due on the 15th of January, 1840. These two notes do not appear to have been paid by Collier. In February, 1845, R. C. Stockton caused an execution to issue against Byrnes, by virtue of the judgment assigned to him by L. A. Collier. Under this writ all the rights and claims of Byrnes against the estate of the insolvent, were sold and bought by Stockton for $500. Under this state of facts, he claims *401 to be a mortgage creditor: 1. For $6000 as transferree of Collier’s judgment against Byrnes and Alexander, and also of Alexander’s rights of mortgage against the property surrendered as derived from Byrnes the former owner, the said sum being the surplus of the bid of $71,000, over and above the anterior mortgages. 2. For the aggregate amount of the notes of $1800 and $4800, with legal interest from maturity, which, he contends became due to Byrnes, whose .rights he has acquired, as soon as the debt evidenced by these notes was extinguished by prescription, this amount having been retained by Collier as a part of his bid, and for the purpose of paying these notes. There was a judgment below dismissing Stockton’s opposition, from which he has appealed.
I. The mortgage given by Byrnes to Alexander, was intended o indemnify and save him harmless from any loss in consequence of the non-payment of the bill for $10,616 64, drawn for his accommodation, by Alexander. It was not given to secure the payment of the bill itself, and could not avail any holder of it. The contract was a personal one with Alexander,-for his indemnification in case he suffered a loss. It is not pretended that he paid anything as the drawer of this bill; 'he never, therefore, became the creditor of Byrnes, and no obligation or indebtedness ever existed in his favor to which the mortgage could attach. The mortgage never took effect, because the event in view of which it was given never occurred. If Alexander himself was not entitled to the mortgage, Stockton acquired nothing by the transfer of his rights. But were it even admitted, that the latter could avail himself of this mortgage, to claim $6000 as the amount due by Collier on his bid over and above the mortgages prior to it on the property, it is urged by the syndic’s counsel, that the mortgage was extinguished by compensation, Collier having become indebted to Byrnes for this balance at the time he held Byrnes’ acceptance on the protested draft for $10,616 64. To this it is objected, that the balance due by Collier was not certain and liquidated; that among the prior mortgages on the property, some were judicial, others were conventional; and that the certificate of mortgages in several instances, does not give the rates of interest due on them, the dates from which it was to run, the costs incurred under the *402 judgments, &c., and that, therefore, no compensation took place. The exact amount of the mortgage debt due on the property, might not appear from the certificate of mortgages, and yet be certain, or easily ascertained. Id certum est quod cerliim reddi po-test. The sheriff’s sale having taken place on the'9th of April, 1839, the interest, costs, &c., due on the recorded mortgages, were to be calculated up to that date ; and the balance remaining was the amount due by Collier on his bid. The opponent does not appear to have had much difficulty in ascertaining that balance to have been $6000, which he.now claims under the mortgage transferred to him. From the moment the two debts due by,Collier to Byrnes, and from Byrnes to Collier co-existed, they extinguished each other, by operation of law, to the amount of the smaller debt, and Byrnes remained liable to Collier only for the difference. Civ. Code, art. 2204. Had Alexander paid this surplus, he could not have come against the property: as it had been sold under seizure, and had not produced a sum sufficient to pay the full amount of his mortgage for $10,616 64, he could only have had personal recourse against Byrnes.
II. It is clear, that on the adjudication of the property to Collier, all the mortgages covered by his ,bid were a part of the price for which the sale was made, and that he became bound to pay them as such. He was authorized to retain, and did retain, the amount of the notes given by Byrnes to Primm, in order to apply' that portion of the price to the payment of said notes whenever they should be presented. Code of Pract. arts. 683, 679. This privilege is allowed to the purchaser, to protect him from the danger of .paving twice, which would exist, if, notwithstanding the mortgage claims on the property, he was to pay the whole price of his adjudication. He is bound to pay the purchase money, ■either to the holders of the mortgages when they come against the property, or to the former owner of it. If the claims of the former have been satisfied by the original debtor, or happen to be otherwise discharged, so that the property is relieved from the mortgages, there can be no good reason why the purchaser should continue to retain the price, which he was allowed to keep only for the purpose of discharging such claims. It is urged by the syndic’s-counsel that, as the insolvent Collier took the place of *403 Byrnes as to the debt due to Primm, the prescription of that debt should enure to him, and, through him, to his creditors. To this' position we are by no means prepared to give our assent. The debt due by Byrnes, being evidenced by the notes he had given to Primm, was prescribed at the end of five years, whereas Collier’s obligation to pay the price of the property adjudicated to him, could be prescribed only by the lapse of ten years. The privilege allowed him of retaining a part of the price in order to pay these notes, and thereby relieve the property from the mortgage given to secure them, did not change the nature of his obligation, which is evidenced by the sheriff’s deed of sale. In Perry v. Holloway, (10 Rob. 107,) this court said : “ The purchaser is bound to pay the previous incumbrances as a part of the price. If it should turn out that a special mortgage, or a privilege, should be certified to exist upon the property which in fact had been extinguished or had never attached, &c., the owner himself, we doubt not, or his creditors in case of a surrender, might recover of the purchaser the amount thus erroneously adopted and estimated as a part of the price.” Whether a mortgage was at the time of the sale erroneously supposed to exist, or whether it did really then exist, but was afterwards extinguished' by prescription or otherwise, without any agency of the purchaser, the obligation of the latter to pay the portion of the price retained to secure himself against the mortgage claim, appears to us to be absolutely the same. Although Collier, by keeping the $12,000, the amount of Primm’s mortgage, might be considered as assuming or promising to pay Byrnes’ several notes, the latter continued to be bound, and might at any time have been called upon for payment by any of the holders. They could become the creditors of Collier, only in case they chose to accept the sti■pulation four autrui resulting from such assumption. On one of these notes, that for $>1800, the holders, Montgomery & Boyd, appear to have received from Collier $49 89, on the 23th of August, 1840. This payment interrupted the prescription running against them as regards Byrnes' as well as Collier, the latter having made it in discharge of the former, and with his implied consent. The note of $4800 does not appear to have ever been presented for payment either to Byrnes or to Collier. *404 The insolvent’s estate is therefore discharged from the obligation of paying it to the holder, whose claim is extinguished by prescription ; but it has become liable to Byrnes for the money retained to meet its payment. It is urged, that if the $4800, the amount of the note prescribed, reverted to Byrnes as a part of the price of his property sold in 1839, Collier, who owed this sum, was at the time the holder of the protested draft for $10,616 64, accepted by Byrnes, and that compensation took place, by operation of law, between the two debts to the extent of their respective amounts. To this the answer is, that the note was not prescribed until long after Collier had transferred to Stockton the judgment he had obtained upon the bill; that until the note was prescribed, its amount was not due to, nor demandableby Byrnes ; that consequently, no compensation took place before such .transfer, and there could be none after it, as Collier had ceased to be the creditor of Byrnes. Civ. Code, art. 2205. As relates to the interest claimed by the opponent from the maturity of the note, it was not due by Collier, as the note was never protested, and was not given for the price of a thing sold. It appears from the record, to have been only secured by a mortgage on land previously sold by Primm to Byrnes. It is the vendor, and not the mortgagee of property producing fruits, who is entitled to legal interest without any demand, or agreement, as an equivalent for such fruits received by the purchaser. Civ. Code, art. 2531. . If interest be claimed as due, because the money retained to pay Primm’s notes was itself the price of property producing fruits, such interest could have been claimed by Byrnes only from the 15th of January, 1845, when the note became prescribed, and his right to receive it accrued. The property surrendered by the insolvent was sold some time in August, 1844, after which time interest ceased to run in favor of all creditors holding mortgages upon it.
It is, therefore, ordered, that the judgment of the Parish Court be reversed, and that Richard S. Stockton be placed on the tableau of distribution as a mortgage creditor for $4800, to be ranked after the mortgages created on the property surrendered by Walter Byrnes, but before any of those granted by the insol *405 vent; and that the tableau thus amended be homologated ; the costs of both courts to be borne by the estate.*

 L. Peirce, for a re-hearing. The contract between Collier and Byrnes was not voluntary, but an obligation solely created by the law.
The obligation, created by the Code of Practice is, that Collier shall pay Byrnes’ note to Primm. The law makes him assume this. There is no stipulation pour autrui.
The authority from 10 Rob. quoted by the court, is sound law, but it is not the case in controversy. There the debt did not exist, at the time of the judicial sale. The law “ si quis, (de jidei-jussoribus ”) declares null any act by which a person obliges himself for a debt extinguished.
But here the law compels Collier to assume a debt due by Byrnes to Primm, evidenced by a promissory note : for so much then his obligation is not a contract to pay the purchase money of a plantation prescribable in ten years, but an obligation created by law, to pay a promissory note secured by mortgage and to be prescribed in five years. He is the debtor marked out by law. No doubt Byrnes is also a debtor ; but the debtor created by law, with the mortgage on his back, is CoU Her.
Now what is prescription? “ Solventi similis est quiprtescribit,” — it is payment. Who is presumed to have paid ? the man who owes simply, or the man who owes, and has a mortgage encumbering his plantation on account of it ?
It is of more importance to Collier than to Byrnes that he should have paid ; and if prescription be payment in law, Collier must be presumed to have paid.
Who would have been the real defendant, if Primm had sued Byrnes on the promissory note, before being prescribed ? It has been often decided, that the person called in warranty is the real defendant. Was not Collier the defendant in warranty ? Byrnes would have turned to him. Primm would, have himself sought the owner of the property mortgaged, and have endeavored to realize the amount due to him from the sale of it.
If then the purchaser, Collier, was obliged to pay; if he would have been in any court the defendant in a suit upon the note ; is it not illusory to give the benefit of prescription to Byrnes, and malee him gain $4800, which by law Collier is presumed to have paid ?
2. Admitting that the doctrine established by the court is correct, and that prescription avails Byrnes only, yet Stockton is not properly classed.
The certificate of mortgages shows, that the only mortgage recorded was that to secure Primm’s notes; this being prescribed in five years, the mortgage was also extinguished.
Therefore, no mortgage is recorded against subsequent mortgagees for this part of the purchase money due by Collier to Byrnes ; there is nothing but the privilege of the vendor, which, not being recorded, must yield to subsequent creditors of Collier by mortgage. The court should therefore have given a preference to the mortgages made by Collier himself, to the unrecorded privilege.
3. There may have been an interruption of prescription, and it ought not to be *406 determined that the right has accrued absolutely to Byrnes, without giving the unknown holder of the note an opportunity to establish the fact. He has not appeared, nor is he a party to, or represented in the proceedings ; and he should be heard before a decision is pronounced, hostile to his interests. This is a debt created by Byrnes originally, and the syndic of Collier’s creditors has no right, under the decisions of this court, to release any mortgage created by a previous owner-of the property, except perhaps in the case of his paying the mortgage creditor. If, therefore, after payment to Stockton, the holder of this note should appear, he might proceed against the property in possession of the purchaser at the syndic’s sale ; and should he prove ani nterruption of the prescription, (on that plea being opposed to him as a bar to his action,) the innocent purchaser, who has already advanced his money, would be compelled to pay over again ; and he certainly has a right to the protection of the court now against an event, the possibility of which is illustrated by the case of the note for $1800, held by Montgomery & Boyd, and which was claimed by Stockton on the same grounds.
4. The sheriff’s sale of Byrnes’ plantation, &e., was a forced sale, a sale for the benefit of his creditors; the price bid was the absolute price, as the only portion thereof to which Byrnes was entitled, was the surplus over and above the incum-brances. There was no privily of contract between Mm and the purchaser; and, if a surplus existed, it was to the officer of the law he was to look for it. The purchaser never contracted to pay any part of the price to him, but to the creditors having liens ; and, if any surplus, to the Sheriff. If, therefore, he could have any right against Collier, it could only be as subrogated by payment to the rights of some creditor, whom Collier had, by his bid and the operation of law, bound himself to pay. The ease is precisely analogous to the syndic’s sale of the property of an insolvent; there is no privity between the insolvent and the purchaser, and he has nothing to do with the price. He can only claim from the syndic the surplus after payment of all the debts ; and, if such sale were on a credit, or any part of the price consisted in the assumption of prior incumbrances, and they became prescribed as against the syndic or prior mortgagees, it would hardly be said that the insolvent could become subrogated to his creditor’s rights by such a process.
Prescription is an exception, and means of defence, but it is not a cause of action,— it is at best a bare presumption of law of payment by a debtor, owing to the silence of his creditor for a certain lapse of time. It is not a proof of payment from which a legal subrogation would result to all the rights of the creditor, or, in other words, a cause of action; and the claim in this case, can only be supported on the supposition, that Byrnes was subrogated to the rights of the mortgage creditor since he had none himself, never having been privy to the forced sale, and Collier never having either directly or by legal intendment, made any promise or come under any obligation to him personally.

Re-hearing refused.