Perry, Syndic, v. Holloway.

ceed according to law; the appellee paying the costs of the appeal.

*Brunot,* for the plaintiff.

*T. G. Morgan* and *Avery,* for the appellant.

ROBERT PERRY, Syndic of the Creditors of Harral J. Powell, an Insolvent, *v.* DANIEL HOLLOWAY.

According to arts. 683, 684 of the Code of Practice, privileges and special mortgages existing on property offered for sale by sheriffs, in favor of others than the seizing creditor and which are preferred to him, form a part of the price for which it may be sold; and it cannot be sold unless something be offered above their amount. The sheriff is required to announce that the purchaser may retain out of the price offered the amount of such privileged debts and special mortgages. The purchaser is bound to pay the previous incumbrances as a part of the price. If it turn out that a special mortgage or privilege, certified to exist upon the property, had been extinguished, or never attached, as where, in the case of a mortgage to secure against future endorsements, the endorser has never been made liable, the owner himself, or his creditors, in case of a surrender, may recover of the purchaser the amount thus erroneously estimated as a part of the price.

Where property is offered for sale by a sheriff, and he does not comply with the law requiring him to announce the privileges and special mortgages existing on it, so as to make it certain what price the purchaser understood he was to pay, the sale will be null.

The plaintiff appealed from a judgment of the District Court of East Feliciana, *Johnson,* J., in favor of the defendant.

BULLARD, J. The plaintiff as syndic of the creditors of Powell alleges that the defendant, Holloway, is indebted to them in the full sum of sixteen thousand dollars ; that, in May, 1840, certain property then belonging to Powell, consisting of a lot of ground in Jackson, a black boy named Jack, and another slave named Henry, together with the interest of Powell in a store then in partnership with Harris, was offered at sheriff's sale, in virtue of a writ of *fieri facias* against Powell, at the suit of Richardson, Waterman and Wood, and that the said Holloway, being the last and highest bidder, it was adjudicated to him for ten dollars, at twelve months' credit, for which he gave a bond according to law. That one of the conditions of

the sale announced was, that the purchaser should be bound for the payment of all mortgages upon the property, having preference over the lien obtained by the plaintiff in execution. That the certificate of mortgages showed a vendor's privilege upon the boy Henry for $1,400, in favor of the estate of Cabarras, but which had been previously extinguished by said Powell. That the same certificate exhibited a conventional mortgage given by Powell to the same defendant, Holloway, upon said lot and slaves for $8,500, nominally to secure said Holloway against future endorsements for Powell, which mortgage was fraudulently executed by said Powell to cover his property from his creditors. That the certificate also exhibited a judicial mortgage in favor of John C. Morris for $509 82; one in favor of Smith and Wright for $212, and interest; and a number of others not necessary to repeat. That all these incumbrances were superior to that of the seizing creditors, and that the defendant bound himself to pay them, as a part of the price. He further alleges that all said judicial mortgages were extinguished before the sheriff's sale by Powell, whereby said Holloway is liable to pay the same amount to the syndic of Powell's creditors. He further states that at the time of and prior to Powell's surrender, the defendant, Holloway, was indebted to him for sundry claims transferred to him, to wit: a note of Gordon for $728 72, with interest; one note signed by Bowman for $45 99, and a debt of $200 due by Brian; and some others, which the defendant is bound to refund. The prayer of the petition is, that Holloway be condemned in the sum of $16,000; and for general relief.

The defendant denies the right of the plaintiff to prosecute this claim. He denies that he bought the property according to the conditions set forth in the petition. He denies the fraud alleged, and avers that there were other mortgages on the property not set forth in the certificate of mortgages, to wit: one in favor of the Bank of Louisiana for $1400; and others. He denies any indebtedness on account of the alleged transfer of debts, and generally all the allegations not expressly admitted.

The sheriff's return upon the *fieri facias* in the case of *Richardson et al.* v. *Powell*, shows that the town lot, the two slaves,

and the interest of Powell in the store, were appraised at $8,600 ; that no bid being made for two-thirds of the appraised value, it was advertised to be sold on a year's credit ; and the sheriff certifies that having announced to the bystanders the terms of sale as being on a credit of twelve months, with a good and sufficient surety and mortgage, and that the property was sold subject *to the payment of all mortgages thereon having preference of this case,* the same was adjudged to Daniel Holloway for ten dollars, for which he gave a bond. .

The certificate of mortgages, which was read by the sheriff at the sale, shows, in substance, the mortgages as alleged in the petition, and particularly a conventional one in favor of Holloway himself, for $8,500, to save him from loss or damage in having engaged to endorse notes for said Powell, in such sums as may be required in the settlement with his creditors, and a vendor's privilege on one of the slaves for $1,400 in favor of Cabarras.

The parol evidence shows that the debt apparently due the estate of Cabarras, according to the certificate of mortgages, had been paid before the sheriff's sale. It is further shown that the interest of Powell in the store was worth about $3,000; that Powell received, in April, 1837, of Hermann, Briggs & Co., $2,222 48, the proceeds of thirty-five bales of cotton shipped by Holloway, and that Powell was treated by that house as the accredited agent of Holloway.

Powell himself testifies that he transferred several notes, and other evidences of debt to Holloway, but that it was to repay him a loan of upwards of two thousand dollars, that he released Powell on account of such transfer, in 1844, and that Gordon's note was transferred in 1840. It is further shown that Holloway paid the other partner for his share of the stock of goods, $3,500. The record shows a judgment against Holloway, upon a note of Powell's for $800, endorsed by him in 1840. It is not clearly shown that Holloway has paid any thing as endorser, the reimbursement of which was secured by the mortgage in his favor. The plea of prescription cannot avail the defendant. Although it is alleged that the mortgage to Holloway was given in fraud, yet the action is not a revocatory one.

The plaintiff does not seek to annul the sale on the ground of fraud. On the contrary, by claiming the price for the benefit of Powell's creditors, he affirms the sale; but alleges that the mortgage to secure Holloway can have no effect, because nothing was ever paid by him as endorser under that contract.

According to articles 683 and 684 of the Code of Practice, the privileges and *special* mortgages on property, offered for sale by sheriffs, in favor of other persons than the seizing creditor and which are preferred to him, form essentially a part of the price for which it may be sold; and it cannot be sold, unless something be offered over and above their amount. The sheriff is required to announce that the purchaser may retain out of the price offered such amount of privileged debts and *special* mortgages. The purchaser then becomes bound to pay such previous incumbrances as a part of the price. In such a case if it should turn out that a special mortgage or privilege should be certiffed to exist upon the property, which, in fact, had been extinguished, or which had never attached, as in the case of a mortgage to secure future engagements as endorser, the owner himself, we do not doubt, or his creditors in the case of a surrender, might recover of the purchaser the amount thus erroneously adopted and estimated as a part of the price. Equity forbids that the purchaser should take the property without paying the price.

But in the present case, the sheriff did not comply with the law in such a way as to make it certain what price the purchaser understood he was to pay. All mortgages, whether special, general or judicial, were stated in his return, to be paid. The stock of goods was not susceptible of mortgage, and it is not certified that any privilege existed upon them, having a preference over the plaintiffs in the execution. There was, therefore, no sale, because there was no definite price, and because it does not appear that the bid was something over and above the amount of the special prior mortgages.

But it does not follow that the creditors of Powell are without remedy, and that the defendant can retain the property without paying for it, or for the ten dollars already paid. There having been no sale, the property remained that of Powell, and pas-

sed to his creditors by the surrender.* We have considered whether under the prayer for general relief we could proceed to decree in favor of the plaintiff, according to this view of the rights of the parties. We have concluded that we may well do so under the pleadings, more especially as the defendant himself contends that there was no sale which bound him to pay the out-standing mortgages.

According to the evidence before us, we think the defendant ought to surrender the town lot and the two slaves for the benefit of the creditors of Powell, and to account for the stock of goods valued at $3.000. But he is entitled to credit for any sums paid out of his own funds for the benefit of Powell, owing before his surrender. The evidence leaves it doubtful whether the defendant was indebted to Powell for notes transferred to him before the surrender, and whether Holloway had loaned him any money as alleged, and how far the sum of $2,222, received by Powell of Hermann, Briggs & Co., as the agent of Holloway, has been accounted for. We cannot adjudicate finally upon these points. They must be left open for further investigation.

It is, therefore, ordered and decreed, that the judgment of the District Court be reversed; and it is further adjudged and decreed that the defendant surrender to the plaintiff, as syndic of the creditors of Powell, the lot of ground and two slaves mentioned in the petition, and that he account for the stock of goods at the rate of $3,000, to be credited with such sums as he may show to the satisfaction of the District Court that he had paid for the said Powell, which were owing before his surrender, and on a full settlement of accounts between them previous to that time; and it is further ordered that, for the purpose of this settlement and allowance, the case be remanded for further proceedings according to law; and that the defendant pay the costs of the appeal.

*Lyons* and *Andrews*, for the appellant.

*A. M. Dunn* and *Merrick*, for the defendant.

---

* The sale under the *fi. fa.* of *Richardson et al.* was made on the 25th of May, 1840; the surrender of Powell was accepted by the judge, 29th July following.