## FRANCOIS JURE *v.* NATALE BALLETIN.

A constable had seized a slave upon which there were prior special mortgages for more than his value. On the day of sale, the mortgagee made a verbal consent to the sale upon the condition, that the constable should hold the proceeds until other property included in the same mortgage was discussed. *Held :* that as the judgment debtor did not consent to this arrangement, the sale was invalid, although the other property, when sold, actually more than paid the mortgagee.

Where property seized on execution is not sold, because the sum bid does not exceed the amount of prior special mortgages, the seizure is not thereby released. If the property be real, the rents are to be collected by the sheriff and applied to the execution ; or if it be slaves the judgment creditor may arrange to be subrogated to the rights of the mortgagees.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *Janin* and *Taylor*, for appellant. *T. W. Collens, C. Dufour*, and *Beauregard*, for appellees. The judgment of the court was pronounced by

SLIDELL, J. On the 15th August, 1850, a slave named *William Diggs* was seized by the constable of a justice's court in New Orleans, upon several writs of *fieri facias* issued against *Balletin*. Afterwards *Juré*, who had a conventional mortgage for $2000 upon this slave and other property, executed by *Balletin* in 1849, and recorded in that year, obtained an order of seizure and sale. Under the writ of seizure and sale, the sheriff levied upon the mortgaged property, including the slave, but did not take him out of the custody of the constable until the 21st September, 1850. On that day, while the slave was still in the custody of the constable, the constable sold the slave under the writs in his hands, for $305 to *Rieffel;* but before executing a deed or making delivery to *Rieffel*, the sheriff took possession of the slave. The mortgaged property, with the exception of the slave, was subsequently sold by the sheriff under the writ of seizure and sale, and produced an amount more than sufficient to pay *Juré's* mortgage. A rule was then taken by *Balletin* upon the sheriff, the various

creditors who had levied under *fieri facias* upon the slave, and *Rieffel* the purchaser, to show cause why the adjudication to *Rieffel* should not be declared null and the levies inoperative, and why the slave should not be delivered by the sheriff to *Balletin*. There was judgment in the court below against *Balletin*, and he has appealed.

It will be observed, that the owner seeks to set aside an adjudication which is not yet consummated by payment of the price and delivery; and the opinion which we are about to give, is to be considered as limited to the case before us.

When the adjudication was made by the constable for a price of $305, there was an anterior conventional mortgage upon the property for $2000 in favor of *Juré*. By art. 678 of the Code of Practice, it is made the duty of the sheriff (or constable) in case of sale of land or slaves, to procure a certificate of mortgages and read the same before the bidding commences. If there be antecedent special mortgages and the bidding exceeds them, the property may be sold; the purchaser retaining their amount in his hands, and paying the surplus of price. Art. 683. But if the price offered by the highest bidder is not sufficient to discharge the antecedent special mortgages, there shall be no adjudication, says art. 684, and the sheriff shall proceed to seize other property of the debtor, if there be any.

Thus it appears that the sheriff's power to sell, depends upon the bid over-running the amount of antecedent special incumbrances; and consequently it has been frequently held, that if property be sold at judicial sale for a price below such incumbrances, the adjudication is invalid. See *McRae v. Chapman*, 10 R. R. 67.

But it is said that in this case *Juré*, the prior incumbrancer, was present at the sale, and entered into a verbal agreement with the constable, by which he assented that the slave should be adjudicated, the money to be held by the constable until the residue of the property mortgaged should be sold by the sheriff. This agreement may be considered binding upon *Juré*, and would estop him from afterwards molesting the purchaser; but it cannot bind *Balletin*, who was not a party to the agreement, and had made no consent that the constable should sell the property except in accordance with the requisitions of law. We are, therefore, of opinion that *Balletin* is entitled to have the adjudication, which has not been consummated by payment of the price or delivery, declared invalid. We should perhaps, however, have sustained the adjudication, if *Juré* had made an agreement with the constable before the day of sale, to waive his right as mortgagee and look merely to the proceeds of sale, and seasonable notice of such agreement had been given to *Balletin*. Without such notice, he had a right to expect that no one would bid over $2000 for a slave which was worth, according to the appraisement, only $400, and consequently that no sale would be effected. He had then no notice to attend the sale and protect his interest from sacrifice.

It is said that *Balletin* is still further entitled to have the seizures by the constable declared inoperative, and the slave restored to him. The argument is, that when no bid could be got over the antecedent incumbrance, the seizure fell: a proposition which the appellant deduces from the language of article 684, already cited, "there shall be no adjudication, and the sheriff shall proceed to seize other property of the debtor, if there be any."

We cannot assent to the proposition, that the seizure is determined *ipso facto* by the failure to obtain a bid exceeding an antecedent incumbrance. Such a doctrine is not directly enunciated in the code, and it is obvious that in many cases it would work a serious injury to the creditor, for whose benefit the right

of seizure is created.  Take the case of a house seized under *fi. fa.*  When the sheriff has seized it, it remains, says art. 658, sequestered in his custody, and he may receive the rent from those who occupy it.  Suppose when the day of sale arrives, the amount of an antecedent special mortgage is not reached, is it not a hardship to the creditor to cut him off at once from the further rents? Again, in case of slaves, although the sheriff is forbidden by the code to hire them out, yet *non constat*, that the creditor, when he finds that they will not bring the price of an antecedent special mortgage, might not be able to make some arrangement to take up such mortgage and acquire a subrogation.  We do not say that the defendant may not, on application to the court, have the seizure quashed, if no just cause to the contrary appear; but we think that the seizure is not to be considered as expiring *ipso facto.*

It is proper to add, that in this case there is an additional reason for refusing to restore the slave to *Balletin*, in the fact that when the sheriff took the slave out of the constable's possession, the creditors made further seizure in the hands of the sheriff, and the sheriff's writ has been satisfied by the sale of the other mortgaged property.

It is therefore decreed, that the judgment of the district court be reversed; that the adjudication of the slave *William Diggs* to the said *Rieffel* be declared invalid and set aside; that the sheriff, upon payment of his lawful charges, restore the said slave to the constable of the Court of the Fourth Justice of the Peace of the parish of Orleans, that the same may be sold under the writs from said justice's court, which, on the 15th of August, 1850, were levied upon the said slave; and that the cost of the rule taken in this cause by said *Balletin*, and the costs of this appeal, be paid by the said *Rieffel.*