WHITEHEAD, Receiver, &c., *v.* AMBROSE CRAMER.

Whatever right or title a person may have to property which he sells as the agent of another, passes by the conveyance as completely as if it were sold in his own name.

Property sold under a twelve months' bond may be adjudicated for whatever it will bring, but if there are anterior special mortgages, such mortgages form an essential part of the price and there can be no adjudication unless the amount bid is sufficient to discharge such anterior mortgages; but an adjudication for less than the prior special mortgages is a relative nullity and one who was neither the owner of the property nor had any real right in it, must show fraud, and injury to him resulting from such fraud to entitle him to annul it.

APPEAL from the District Court of the parish of Madison, *Perkins,* J. Stockton & Steele, for plaintiff. Short & Parham, for defendant.

OGDEN, J. This suit was brought against defendant *Cramer,* as the party in possession of certain property which the plaintiff seeks to subject to a judicial mortgage resulting from a judgment in his favor against *Nicholson Barnes,* recorded in the parish of Madison where the land is situated, on the 4th of June, 1845, at which date the plaintiff alleges the property belonged to *Nicholson Barnes—Cramer* being in possession only as overseer of the plantation, entered a disclaimer and the suit is defended by the tutor of the minor heirs of *Wm. C.* and *Mary G. Demoss* for whom he held possession. The answer sets up title to the property in *Mary G. Demoss* at and before the date of the registry of the plaintiff's judgment, first under an act of sale from *Nicholson Barnes* as agent of *Benjamin Lee,* bearing date the 17th of October, 1844, to the said *Mary G. Demoss* and secured under a deed from the Marshal of the United States for the Eastern District of Louisiana, by which he conveyed the same property to *Mary G. Demoss* as the purchaser at an adjudication made by him in the execution of a writ of *fieri facias,* which issued from the Circuit Court of the United States in said district at the suit of *A. W. Putnam* v. *Nicholson Barnes* and *Jessee Stansbourgh.* The transfer which *Barnes* as agent of *Lee* made to Mrs. *Demoss,* being an act under private signature and not having been duly recorded as required by Article 2417 of the Civil Code to give it effect against creditors and third persons, the effect of a judicial mortgage on the property is claimed in favor of the plaintiff's judgment against *Barnes,* notwithstanding he had ceased to be the actual owner, when the judgment was obtained against him, and although the Marshal's deed to Mrs. *Demoss,* which is prior in date to plaintiff's judgment, was put on record in the parish of Madison previous to either the rendition or the registry of the plaintiff's judgment against *Barnes;* it is contended that no effect can be given to it, in consequesce of what is alledged to be, a radical and absolute nullity in the Marshal's sale. Before proceeding to consider whether the adjudication of the property by the Marshal to Mrs. *Demoss* can be treated as entirely null and void, we will settle the question as to the actual ownership of the property, at the time of the registry of the plaintiff's judgment. *Nicholson Barnes* as the agent of *Benjamin Lee,* had entered into an agreement with *William C. Demoss* as the agent of his wife, *Mary G. Demoss,* by which, this with other property mentioned in the agreement was sold to Mrs. *Demoss,* and by which *Barnes* bound himself in the penal sum of $20,000 to perfect the title to the property, and to deliver possession on the 1st of January, 1845, and in consideration thereof, *Demoss*

obligated himself to pay the sum of ten thousand dollars, at stipulated periods, and to convey to *Barnes* a tract of land containing four hundred and fifty acres, known as the *Levy Place*, situated in the parish of Madison. It was farther stipulated between the parties, that *Demoss* should retain a lien on the land thus to be conveyed to *Barnes*, until he, *Barnes*, should perfect the title to the property conveyed by him in said agreement to Mrs. *Demoss*. Under this agreement, *Demoss* took possession of the land in controversary, on or about the first day of January, 1845, a few days before the United States Marshal's sale. The agreement by *Demoss* to convey to *Barnes* the tract of four hundred and fifty acres was equivalent to a sale and having obligated himself to pay $10,000, and by the consent of *Barnes*, taken possession of the property conveyed to his wife—there remained nothing to be done, to complete the sale as between Mrs. *Demoss* and her vendor—but as encumbrances existed on the property, it was in the contemplation of the parties and so agreed, that *Barnes* should perfect the title. Although the sale was made by *Barnes* as the agent of *Lee*, it cannot be doubted that whatever right or title, either in law or equity, he might himself have had to the property. and which his creditors could have claimed to subject to the payment of their debts, passed by the conveyance to Mrs. *Demoss* in as full and complete a manner, as if the sale had been made in his own name and not as agent of *Lee*. It is not charged, that there was any design to defraud any creditors of either *Lee* or *Barnes* and the transaction being untainted with fraud, must be viewed in the light of a complete divestiture of title so far as regards either *Lee* or *Barnes*, in favor of Mrs· *Demoss*.

It remains then to be considered, whether the failure to record this private agreement until after the registry of the plaintiff's judgment, was remedied by the subsequent title acquired under the Marshal's sale, which was duly recorded before the plaintiff's judgment. The alleged defect in the Marshal's sale, is, that the property was sold for an amount less than a previous special mortgage existing on the property, and having priority over the seizing creditor, as shown by the certificate of mortgages. There existed at the time of sale a special mortgage, having precedence over the plaintiff of $23,440 68, in favor of *Asher Moses Nathan*, the Marshal's return shows that the property was adjudicated to Mrs. *Demoss* as the highest bidder for $1500 ; the Sheriff's deed of sale recites, that the property was adjudicated for that price, subject only to one mortgage, to wit: the mortgage of *Asher Moses Nathan*, for the sum of $23,440 68. As the sale was not made subject to the payment of this prior special mortgage, which the price at which the property was adjudicated was insufficient to discharge, according to the well settled jurisprudence on this subject, the sale was irregular and might be set aside, by a party who could show such an interest existing at the time of the sale, as would entitle him to set up this defect against it. The sale was made under a twelve months' bond and therefore without the benefit of appraisement. The property at such a sale may be adjudicated, for whatever it will bring, but if there are anterior special mortgages, such mortgages according to the doctrine held by our courts, form an essential part of the price, and there can be no adjudication unless the amount bid is sufficient to discharge such anterior mortgages. In the case of *DeArmas* v. *Wagner*, 3 Mart. N. S. 606, where the amount bid was less than the anterior special mortgage—the court held there was no sale, and Judge Martin who delivered the opinion of the court, states with clearness and pre-

cision the true and only foundation of the rule, which has been uniformly adhered to on this subject. He says that if the Sheriff sell property subject to a special mortgage and there is no surplus after paying the mortgage, there is then no price, which is the essence of every sale and such a sale would be use· less to the plaintiff and oppressive to the defendant, and when the price bid is less than the amount of the special mortgage, the sale would be destructive of the right of the mortgage. This view taken by the court, at that early period of our Jurisprudence, has been adhered to in all its subsequent decisions, and shows that the provisions of law on this subject were designed exclusively for the interest and protection of the defendant in execution and of mortgage creditors, except in the intent and for the protection of the owner of the property and those having real rights on it growing out of mortgages, no reason exists for a law prescribing that property seized in execution shall be sold under certain formalities and for a certain price. The pain of nullity which has been denounced when such requisites have not been complied with, has always been decreed in the interest of parties in that relation and as there exists no motive of public policy, nor any reason of public utility for the prohibition to adjudicate the property at Sheriff's sale for less than the amount of the prior special mortgages, the nullity is only relative and cannot be provoked by any other persons than those in whose interest the prohibiton was made.

Toullier treating on the subject of absolute and relative nullities, says: "Mais, d'un autre côté, ce raisonnement trop subtil et fondé sur une théorie purement abstraite, est détruit dans la pratique par l'expérience et l'observation qui démontrent que l'intention du législateur n'a pas toujours été d'annuler les actes défendus par la loi, ou dans lesquels on à omis quelques formalités qu'elle prescrit; que ce serait même souvent aller contre son vœu et commettre des injustices. Le législateur, en défendant ou en commandant un acte, peut n'avoir voulu que donner l'ordre ou le droit de s'y opposer, ou bien de soumettre celui qui l'aurait fait ou omis aux dommages et intérêts des personnes qui blessent son action ou son omission; il peut aussi avoir voulu que ces actes soient nuls et sans effet. C'est donc à lui de manifester sa volonté sur ces différens points, et surtout de la manifester clairement; car, plus vigoureusement encore qu'un simple citoyen, le législateur est tenu de manifester sa volonté, de manière que les sujets ne puisse se méprendre sur le sens de la loi. Autrement, ses dispositions devendraient des pièges tendus à la simplicité."

Toullier on Obligations, 2 vol. No. 481.

In the cases of *Loucks* v. *The Union Bank of Tennessee,* and *Robinett* v. *Compton,* 2 Ann. R. 617 and 861, when the property had been sold at Sheriff's sale for less than the amount of previous special mortgages, it was held by the court, in conformity with this view of the law, that as those mortgage creditors were not injured and did not complain, the sale could not be set aside on the ground of the insufficiency of the price. It results from this exposition of the law, that a party who seeks to annul a judicial sale on the ground of noncompliance with the requisites prescribed by law for the validity of such sales and who neither was the owner of the property nor had any real right in it, must show fraud and injury to him resulting from such fraud, to entitle him to succeed. In the present case, fraud is neither alleged nor proved, and without fraud, there could not have been any injury of which the plaintiff would have had a right to complain. It is shown by the evidence that the special mortgage in favor of *Nathan* has been satisfied and no complaint is made by any

of the persons having judicial mortgages on the property. The defendant in the execution could not be heard to complain of the insufficiency of the price, as the property was sold for $1500 in cash, which was paid to the seizing creditor and he had previously received from Mrs. *Demoss* a full consideration for the value of the property, and was bound by his agreement to discharge all the mortgages resting on it.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be affirmed with costs.

BUCHANAN, J., dissenting. For the reasons given by me in the case of *Whitehead* v. *Wiley*,* I think the judgment instead of being a final judgment for defendant, ought to be one of nonsuit.