Lane and Husband vs. Cameron and McNeely.

## No. 9137.

Mrs. M. M. ADA LANE AND HUSBAND vs. ROBT. S. CAMERON AND LUDLOW McNEELY.

Defendants' title under a judicial sale is attacked by plaintiff on sundry grounds:

1. It is charged that the sheriff who made the sale was one of the purchasers thereat. The evidence negatives the charge.

2. That the sheriff's deed to the purchasers is not in the form prescribed by law. The adjudication was sufficient to convey the title.

3. That there was no seizure of the property. The sheriff did seize, but as the property was only an undivided half-interest, the whole of which was owned and possessed by plaintiff, he did not maintain a keeper. He could not take physical possession or divest plaintiff's possession which was *per my and per tout*. Moreover, plaintiff was represented at the sale by her attorney, who took part in the bidding and offered in her behalf to take defendants' purchase and furnish the twelve months' bond, and no objection was urged on ground of defective seizure. She is estopped.

4. That there was no legal appraisement. The same estoppel applies and, besides, the appraisement was legal.

5. That the defendants failed to comply with adjudication by furnishing a valid twelve months' bond. In this matter plaintiff has no interest.

6. That the bid did not exceed the prior special mortgages on the property. The mortgage certificate did not show any prior special mortgage. Plaintiff, who was only a third possessor, is incompetent to raise questions involving the existence, record and rank of an alleged mortgage, which we cannot decide in absence of the creditor of that mortgage.

7. That the thing sold was a litigious right and that one of the purchasers was a deputy clerk of the court. So far as the *title* is concerned there was no litigious right involved. As to the litigated encumbrance by the alleged mortgage above referred to, that can only be opposed by the encumbrancer.

A defendant in writ is not permitted to attack the sale of his property thereunder, on the ground that the price of adjudication is not in excess of an anterior conventional encumbrance, where the creditors, in whose favor it exists, has filed a third opposition, claiming to be paid out of the proceeds of sale.

APPEAL from the Twelfth District Court, Parish of Grant. Barbin, J.

*E. D. White, Jos. P. Hornor* and *F. W. Baker* for Plaintiff and Appellant.

*Robt. P. Hunter* and *J. C. Wickliffe* for Defendants and Appellees.

The opinion of the Court was delivered by

FENNER, J. Lionel L. Levy held a judgment against W. S. Calhoun operating as a judicial mortgage on his immovables from the date of its recordation in the parish of Grant, viz: July, 1870,

Mary S. Calhoun, the mother of W. S. Calhoun and of plaintiff, Mrs. Lane, died in 1871, and her two said heirs accepted her succession and were put in possession thereof, whereby the undivided half of her property thus falling to W. S. Calhoun became affected by the judicial mortgage resulting from the recordation of said judgment.

In 1873 W. S. Calhoun sold his interest to his sister, Mrs. Lane, whereby it became necessary for Levy to proceed by hypothecary action against her, in order to subject said property to his judgment.

Such an action was brought in which she was personally cited, and resulting, after due proceedings, in a final judgment recognizing the mortgage "upon the undivided one-half interest formally belonging to W. S. Calhoun in the property belonging to his mother, Mary S. Calhoun, deceased, and more particularly described as follows, viz: "setting forth specifically the properties here in contest, besides others situated in the parish of Rapides. The judgment proceeds to recognize the operation of the judicial mortgage as unaffected by the sale from W. S. Calhoun to Mrs. Lane, and to order and decree that the said above described property, or so much thereof as may be necessary, be seized and sold according to law, to pay the said judgment and judicial mortgage, etc."

Under this judgment, a writ of seizure and sale was issued describing the property fully, under which the undivided one-half interest in the Grant parish property was seized and advertised for sale for cash.

There being no sale at the cash offering, the property was readvertised for sale on twelve months' bond, and was finally adjudicated to defendants, who furnished the bond and received the sheriff's deed.

Plaintiff brings the present action in which she alleges ownership and possession of the property; that defendants, pretending to be owners of part thereof are attempting to take possession : that their

pretended ownership and title are null and void for various reasons set forth; and she prays for relief by injunction and for a judgment decreeing the pretended title of defendants to be null and void.

It is unnecessary to notice the proceedings further; nor is it essential to classify the action as to its nature. The entire merit of the case hinges on the question of the validity of defendants' title which is distinctly and properly put at issue.

Amongst a multitude of objections to that title, the appellant plaintiff urges the following only as " necessary to be considered," and we shall treat them in the order in which they are presented in the able brief of her counsel.

1. That the sheriff himself, who made the sale, was one of the purchasers. If the fact alleged were sustained by the evidence in such manner as to show that the sheriff was, directly or indirectly, actually or contingently, a purchaser, we should not hesitate to strike the sale with nullity. This would result, not only from the express provision of section 157, Revised Statutes, but, even independently thereof, from the common principles of honesty and morality.

But the evidence distinctly and unequivocally negatives the allegation. The only connection the sheriff is shown to have had with the matter is this : after the adjudication and after the defendants had procured the names of several sureties on the twelve months' bond, and had presented the same to the sheriff for acceptance, the counsel for the seizing creditor objected to its sufficiency, whereupon defendant, McNeely, asked Mr. Teal, the sheriff, to sign the bond personally as surety, and Teal, saying that he was good for the amount of the bond, consented to sign and did sign it.

It appears that, in order to obtain sureties, defendants had held out as inducement that upon paying their *pro rata* of the investment, they should have an interest in the property. One of the defendants, Cameron, testifies that he *thinks* he stated this to Teal before he signed the bond, but is unwilling to swear to it. Teal, on the other hand, swears positively that Cameron is mistaken and that he received no such communication. It would be going great length to charge Teal with perjury upon the mere vague impression of Cameron to the correctness of which he is unwilling to swear. But, even were we to do so, we are not prepared to say that the signature of the sheriff would invalidate the bond or the sale. Defendants had already tendered securities. The law is clear that " the sheriff, being the creditor's

agent in taking the bond, is liable to him (upon proper proceedings) if he accept insufficient, and, to the purchaser if he refuse sufficient, security." Wells vs. Moore, 3 Rob. 154.

Under this bi-lateral responsibility, the sheriff was bound to act upon the security offered. It is not shown that it was insufficient, or that if the sheriff had rejected it, he would not have been liable to defendants. The seizing creditor has no other lawful interest than to get a safe bond. If the sheriff's personal signature added to the security, we see no room for complaint on his part and no such complaint is presented here. As to the plaintiff, Mrs. Lane, it does not appear that she is concerned in the question. The purchasers' rights surely cannot be destroyed by the fact that the sheriff consented to sign the bond. Had he refused, *non constat* that the security already offered was not sufficient and would not have been accepted, or, if declined, that they would not have given other additional security.

2. That the sheriff's deed to defendants was not in conformity to the requirements of articles 693, 694 of the Code of Practice. The variances are insubstantial; but, in any event, in view of the full proof of the adjudication, and of articles 695 and 690, C. P., and 2608 C. C., and repeated adjudications of this Court on this question, the learned counsel will hardly expect us to consider these objections as serious.

3. That there was no seizure of the property. The return shows that he seized *and* that he duly served notice of seizure upon Mr. and Mrs. Lane. The sheriff, in his testimony, says: "I appointed no keeper. I considered myself in possession, being upon the property every day."

The property to be seized was only the undivided half interest. The whole was in possession of Mrs. Lane as owner, and the other undivided half was not subject to the seizure. That half interest existed in every fragment of the soil. The sheriff could not divest her possession or take any exclusive of hers. How was he to take the property into his physical custody without divesting hers, which he had no right to do? The utmost he could have done would have been to establish himself as joint possessor with her. The object of actual seizure is to terminate the possession of the seized debtor and to destroy the *indicia* of untrammeled ownership resulting from the debtor's title and possession combined. Where the possession is such that it cannot be lawfully disturbed, as in this case, it would seem that there would be no more necessity for appointing and maintaining a keeper than in the case of property in the possession of a tenant under lease.

But, in any event, the evidence establishes that defendant was represented at the sale by her attorney, who took, in her behalf, an active interest in the proceeding, and who suggested to the attorney of the seizing creditor to bid, and who afterwards offered, in her name, to take defendants' place as purchaser and to furnish the bond required of them. No opposition was made to the sale on the ground of any irregularities in the proceedings, and we consider that she is estopped from urging such objections now. Mullen vs. Follain, 12 Ann. 838.

4. That there had been no legal appraisement of the property. The estoppel just mentioned also applies to this point; though the record, in our opinion, establishes fully the legality of the appraisement.

5. That the defendants had failed to comply with the adjudication by giving a valid twelve-months bond.

We have puzzled our wits in vain to discover what interest plaintiff can have in this question. The bond has been given and accepted by the sheriff. It is for the exclusive benefit of the seizing creditor or others having claims upon the price. If they are satisfied, plaintiff may well hold her peace.

6. That the adjudication was not legal because the bid did not exceed the prior mortgages on the property.

To maintain this point, plaintiff seeks to establish the existence and priority of a special mortgage in favor of the Mechanics and Traders' Bank, which did not figure on the official certificate of mortgages. The want of interest or power in plaintiff to raise this question is apparent from the fact that, in its assertion she presents for our determination, in the absence of the bank, a number of nice questions as to the existence, validity and rank of the bank's alleged mortgage, in the determination of which the bank is vitally interested, and which we must absolutely refuse to consider without a hearing of the bank.

Her counsel says that this objection of want of interest is answered by the case of Lawrence vs. Birdsall, 6 Ann. 688, wherein it was held that such nullity could be urged by defendant. But in that case the defendant was the *personal* debtor, and remained bound for whatever part of the debts had not been satisfied by the sale of his property. His interest that his property should not be sold at a less price than the law required was obvious. But plaintiff here is only liable as third possessor of mortgaged property, without any personal liability for either the seizing creditor's or the bank's debt. What does it matter to her whether the property sold for only $4500, or for $4500 *plus* the bank's claim, since, even in the latter case, there would remain a large

deficit due on the mortgages priming her title; and since, in any event, she cannot be held for a dollar beyond the price of the property?

7. That the sale was that of a litigious right, and that one of the defendants having been at the time of the purchase an officer connected with the court in the capacity of deputy clerk, the sale is null under the provision of C. C. art. 2447.

The Code imposes two classes of restrictions upon the acquisition of litigious rights:

*First.* As to all persons, it provides that the title acquired by transferee may be divested by the debtor's paying to him the price of the transfer. Art. 2652.

*Second.* It strikes with nullity purchases by public officers connected with courts of justice of litigious rights falling under the jurisdiction of the tribunal in which they exercise their functions. Article 2447.

Under the former article it has been repeatedly decided that it applied only to conventional transfers, and not to judicial sales. Early vs. Black, 12 La. 205; Succession of Tilghman, 11 Rob. 124; D'Apremont vs. Berry, 6 Ann. 464.

It is contended by defendants that a like distinction applies to the prohibition under article 2447. Much might be said in support of this contention if the question were open; but it has twice been decided that the article applied to judicial sales. Copley vs. Moody, 2 Ann. 487; McCarty vs. Splane, 8 Ann. 482.

The question remains, whether the thing sold was a litigious right.

There is no dispute as to the validity of Levy's mortgage and judgment and as to the right to have the property sold. There is no dispute as to W. S. Calhoun's heirship or to his original title to the property, or as to the title of Mrs. Lane derived from him. The thing sold possesses in itself no feature of a litigious right. The only matter of litigation affecting the case in any manner is that touching the existence and rank of the Mechanics and Traders' Bank's alleged mortgage. But the bank had filed a third opposition in the proceeding under which the sale was made, in which it claimed to be paid by preference out of the proceeds of sale. How a dispute over the distribution of the proceeds of a sale can make the thing sold a litigious right, we do not perceive.

But, besides, it has been held that the nullity resulting from a purchase in violation of article 2447 is a relative nullity, in the sense that only one whose right is violated can invoke it. N. O. Gaslight Co. vs. Webb, 7 Ann. 168.

The case of Consolidated Association vs. Comeau, 3 Ann. 552, relied on by plaintiff's counsel, negatives, rather than sustains, her right to set up this objection. There, the purchase had been made during the pendency of a litigation in which the Consolidated Association was seeking to subject the property to a mortgage claimed by it. The purchaser, attorneys of the court, opposed their title derived by this purchase to the litigating mortgage creditor. The court said: "The naked *title* they had a *right to buy;* but so far as the question of encumbrance was involved, and *so far as they avail themselves of their purchase to resist the claim of plaintiffs,* the purchase is a nullity, and can confer no rights."

From this it clearly appears that defendants' *title* is not questionable; and that is only when their purchase stands in the way of the litigating mortgage creditor that the latter may invoke its nullity *so far* as it forms an obstacle to *his* right.

Obviously, the plaintiff here has no concern with anything but the question of *title,* and cannot be listened to in championing the rights which, if they exist, adhere to the bank alone.

Our investigations leave no doubt in our minds that plaintiff has no valid ground upon which to contest this sale.

Judgment affirmed at appellant's cost.

---

ON APPLICATION FOR REHEARING.

BERMUDEZ, C. J. The only grounds upon which this application could be sustained would be: that the price of adjudication was not in excess of an alleged anterior conventional encumbrance, and that the plaintiff here, defendant in writ, had an interest in seeking the nullity of the sale, although perhaps not personally bound for the debt secured by the mortgage; but when it is considered that the creditor whose rights the plaintiff herein seeks to champion has filed a third opposition, asking to be paid out of the proceeds, and has thereby ratified the sale, the seeming foundation gives way and the superstructure falls through. This we say without prejudice to any adverse rights of that opponent.

Rehearing refused.