McCALEB, Justice.
This is a monition proceeding arising out of a sheriff’s sale, held in the above entitled cause, in which plaintiff, Lambert, who filed a materialman’s lien on certain residential property under construction belonging to defendant, Bond, reduced the lien to judgment in the sum of $3161.37, and caused the real estate to be seized and sold in satisfaction thereof.
The undisputed facts are that Bond owned a parcel of unimproved land situated in the town of Jonesville, Louisiana, described in his deed of purchase as follows :
“Lot No. Five (5) and that part of Lot No. Six (6) of the Lanier Addition to the town of Jonesville, Cata-houla Parish, Louisiana, as per plat thereof recorded in the records of Cat-ahoula Parish, and certified by J. P. Sessions, Registered C.E. No. 184, dated June 21, 1954, that part of said Lot herein conveyed being described as follows, to-wit:
“Commence at the southeast corner of Lot No. 6 of said Lanier Addition and run thence South 81 degrees 5 minutes west a distance of 37.5 feet to a point; thence run North 8 degrees 55 minutes west to the North boundary *469 line of said lot 6; thence run North 77 degrees 15 minutes east along the north boundary line of said lot 6 to the northeast corner of same; thence run South 8 degrees 55 minutes east along the east boundary line of said Lot 6 to the southeast corner of same, the point of beginning.”
In order to secure funds to pay for the erection of a residence on this property, Bond executed a conventional mortgage to the First Federal Savings and Loan Association of Winnfield, Louisiana in the amount of $9,000 and subsequently began construction on the premises. After the mortgagee had paid over approximately $4,200 during the progress of the work, it refused to make further advances toward the construction of the residence, apparently because Bond had become indebted to several materialmen, including Lambert, for sums in excess of the amount he was financially able to pay. Then, as aforesaid, Lambert filed the present action, obtained judgment and caused the issuance of a writ of seizure and sale under which the sheriff advertised the property and sold it at public auction to one Johnny Hontzas, the highest bidder, for $6,500.[1] Following the adjudication Hontzas, availing himself of the provisions of R.S. 13:4941-4951, filed the instant monition proceeding to have the sale confirmed, citing Bond and the creditors holding judgments against him as well as the mortgage creditor. Bond and James H. Terry, a judgment creditor, filed motions attacking the sale.
Bond, who appeared in propria persona, contended that the sale was void, being violative of Article 684 of the Code of Practice, and also that the property was exempt from seizure since it was purchased by him with proceeds from a National Life Insurance policy and a Veterans Administration pension.
Terry likewise contended that the sale was violative of Article 684 of the Code of Practice and further pleaded that the description under which the property was advertised and sold was fatally defective.
After hearing the evidence, the trial judge rejected all objections and confirmed the sale to Hontzas. Only Bond, who is now represented by counsel, has appealed.
In this Court, Bond has abandoned his contention that the property was exempt from seizure but is reurging his complaint that the sale was violative of Article 684 of the Code of Practice because the sheriff failed to inform the bidders, at the time he offered the property at auction, that the actual mortgage indebtedness was only some $4,200, rather than $9,000, as reflected by the mortgage certificate read by him. In addition, counsel for Bond is asserting the contention made by Terry in the district court that the property was not adequately described in the advertisement and the adjudication.
Bond’s first point is based on the theory that the act of the sheriff in informing the public that the primary obligation encumbering the land was $9,000, when it was less than one-half that amount, had the effect of stifling competition as the prospective bidders must have necessarily assumed that the mortgagee was prepared to bid no less than $9,000 in order to protect its interest in the property and, thus, bidding was discouraged to his prejudice. It is said that this method was violative of the purpose and spirit of Article 684 of the Code of Practice, if not its specific provisions.
The argument, although appealing, cannot be legally sustained. Article 684 of *470 the Code of Practice provides, in substance, that, if the final bid is not sufficient to discharge the privileges and mortgages existing on the property having preference over the judgment creditor, there shall be no adjudication and the sheriff shall proceed to seize other property of the debtor. We think it apparent that this provision is designed solely for the protection of the preferred creditors. Consequently, since the highest bid for which the property was adjudicated was ample to discharge the mortgage which outranked the seizing creditor, it can hardly be said that the sale is violative of Article 684.
Articles 678 and 725.7 of the Code of Practice require that, where the property is to be sold in satisfaction of a judgment, the sheriff shall read a mortgage certificate to show whether there exist any privileges or mortgages on the property offered for sale and, should he fail to do so, he is liable for a fine. This certificate, which he must read, is to be obtained by him from the office of the Recorder of Mortgages in the Parish where the sale is made. In the instant case, the sheriff admittedly complied with these provisions; the mortgage certificate stated the amount of the mortgage and not the current indebtedness of the mortgagor. Indeed, there is no requirement that the sheriff ascertain the current indebtedness ; when he reads the certificate, as furnished him by the Recorder, he complies with the law.
Bond’s second contention, that the property was not adequately described in the advertisement and the adjudication, is of a more serious nature. Counsel for Lambert, who seek to uphold the validity of the sale, suggest that this point is not properly before us since Bond did not raise the question in the trial court. Many cases are cited by them supporting the proposition that issues not raised by pleadings nor passed on by the lower court cannot be noticed on an appeal. See, among others, Weingart v. Delgado, 204 La. 752, 16 So.2d 254; Crichton v. Lee, 209 La. 561, 25 So.2d 229 and authorities there cited.
This objection is not tenable here for more than one reason. In the first place, the issue as to the sufficiency of the description under which the property was sold was tendered by Terry in the district court and was actually passed on by the judge. Therefore, the pronouncements relied on are not pertinent as they are founded on the premise that a reviewing court will not pass on issues which have not been raised or disposed of in the trial court. Furthermore, this is a monition proceeding and, under R.S. 13:4945, the judge is cautioned not to homologate and confirm a judicial sale unless “* * * he shall be fully satisfied that the advertisements have been inserted in the newspapers, as already directed, and that the property has been correctly described, and the price at which it was purchased, truly paid”.
We therefore consider the merits of Bond’s contention. The description of the property contained in the deed, which is. above set forth, was not used by the sheriff. Instead, the parcel was advertised and sold under the following description:
“Especially Lot No. 5 and a portion of Lot No. 6 of the Lanier Addition to the Town of Jonesville, Catahoula. Parish.”
Counsel for Bond complains that this description is vague and wholly insufficient in that no prospective bidder is able to determine what portion of Lot No. 6 is to be-sold.
The complaint is well founded. A description of this sort, which does not refer to a plat or conveyance and gives no-clue whereby the public or, for that matter,, the appraisers, can ascertain the location of the property and its dimensions does not satisfy the requirements of the law respecting judicial sales. Even if we were to say that the designation of Lot No. 5 in the *471 Lanier Addition to the town of Jonesville would furnish enough information to enable a prospective purchaser to intelligently bid on that lot, the fact that only an undesig-nated portion of Lot No. 6 was included as part of the parcel to be sold, renders the description too indefinite to satisfy legal requirements, for the bidder neither knows, nor can he ascertain from the description, the size of the portion of Lot No. 6 or its location — albeit, he is not informed whether it actually is contiguous to Lot No. 5.
This case is no different in principle from the many cases wherein it has been held that the judicial sale of a judgment debtor’s right, title and interest in certain real estate does not comply with the law. See Gales v. Christy, 4 La.Ann. 293; Moore v. Knapp, 7 La.Ann. 21; Dearmond v. Courtney, 12 La.Ann. 251 and Mulling v. Jones, 153 La. 1091, 97 So. 202.
In McDonough v. Gravier’s Curator, 1836, 9 La. 531, wherein it was held that a description of certain property was too vague and indefinite to effect a valid judicial sale, Justice Mathews, in speaking for the Court, pointed out that, while our Code of Practice does not expressly state the manner in which property sold in execution shall be described, “* * * yet it results from irresistible implication derived from the Articles 676 and 702, that property thus seized must be described much more specifically, and with considerable and much greater precision, and certainly more than was done in the present instance”. There, the seizure and sale described the property as the debtor’s right, title and interest to the lands lying between two streets (the boundaries of the tract) and did not specify which lots therein the debtor still owned.
Counsel for plaintiff take the position that the description herein is sufficient since the only land owned by Bond in Catahoula Parish was Lot No. 5 and a portion of Lot No. 6 in the Lanier Addition to the town of Jonesville and they cite authorities holding that, though a description of property in a deed be imperfect, its sufficiency will be upheld where the land is easily identified by reason of the circumstance that the vendors had only one piece of property in the parish. See In re Perrault’s Estate, 128 La. 453, 54 So. 939 and Abshire v. Lege, 133 La. 254, 62 So. 667.
The cases depended on by counsel are inapplicable as they involved the legality of the title to the property, a petitory action in Abshire v. Lege and a suit to compel a purchaser at a succession sale to accept title in In re Perrault’s Estate. Here, in this monition proceeding, we are called on to determine only whether the formalities of the law have been observed by the executive officers.
It may be conceded, for purposes of discussion in this case, that the insufficiency of the description is not such an irregularity as to render the sale null and not curable by the prescription of two years provided by Article 3543 of the Civil Code. Accordingly, were this a case in which the defect in description had been cured by prescription, or where the title of the purchaser at the judicial sale was being assailed after he had taken possession of the land, the authorities cited by plaintiff’s counsel might govern the result. But, being a monition proceeding, no question of title is involved — the sole question is whether there has been an observance by the public officers of all of the formalities required by law in a forced sale of the property. See City of New Orleans v. Westwego Canal & Terminal Co., 206 La. 450, 19 So.2d 201 and authorities there cited.
The judgment appealed from is reversed and it is now ordered that the adjudication and sale complained of be annulled and set aside at the cost of R. Milton Lambert and Johnny Hontzas.
HAMITER, J., dissents.

. The property was appraised at the sum of $9,000, the appraisers being appointed conformably with Articles 671-676 of the Code of Practice. Lambert appointed an appraiser of his choice; Bond acted in his own behalf as appraiser and, when they could not agree, the sheriff appointed one Crawford as a third appraiser, after which the $9,000 value was finally reached.