REDMANN, Judge.
By petition of April 1974, a corporation’s liquidator sought to annul judicial sales of September 1972 of corporate property, and (or?) to cancel as satisfied the mortgages whose foreclosure resulted in the sales. Plaintiff’s theory of the nullity is that the sales were invalid under C.C.P. art. 2337 because the price was insufficient to pay a superior mortgage and costs.
The trial court dismissed on exception of no right of action, C.C.P. art 927(5). We reverse.

Facts Alleged

Plaintiff’s corporation had executed on September 2, 1970, a $6,270 mortgage in favor of Causeway Mortgage Co., Inc. against perhaps 30 or 40 lots in two squares in Kenner. The mortgage was recorded. On three occasions thereafter, plaintiff’s corporation executed collateral mortgages (plaintiff inexactly asserts “in favor of Jaxon Applebee Corporation”) for $35j000, $50,000 and $120,000, against groups of two, a second two, and seven other lots (respectively) of the already-mortgaged lots. These collateral mortgages were foreclosed by Jaxon, and Jaxon made the high' bid of $300 for each group of collaterally mortgaged lots (a total of $900) at sheriff’s sales of September 27, 1972, and the sheriff adjudicated the lots to Jaxon.
At the time of the September 27 adjudications there was a balance of over $4,000 unpaid on the superior mortgage debt. Plaintiff argues that under C.C.P. art 2337 [1] the sheriff could not sell the lots for less than that superior mortgage’s balance. However, on September 29 Causeway Mortgage released its superior mortgage insofar as it affected these eleven lots.[2]
On October 31, 1972 Jaxon sold the eleven lots (without warranty and without recourse even for the return of the price, “as a result of the business agreement between the parties”) to Louisiana Management Services, Inc. for $160,000, on terms of all credit, represented by a demand note. The president of Causeway Mortgage was also president of Louisiana Management and he and others who were (it is somewhat indistinctly alleged) sureties on the notes secured by the collateral mortgages are alleged to be the “principals” (the shareholders ?) of Louisiana Management.

Law

The trial judge reasoned that art. 2337 protected (and authorized suit by) no one but the superior creditors, citing Lambert v. Bond, 1958, 234 La. 1092, 102 So.2d 467.
In fact Lambert did annul its sale (for want of a valid description), and therefore cannot be binding precedent for refusing to annul a sale. In further fact, Lambert’s sale price was $6,500 and the superior mortgage balance only $4,200 (though the original amount was $9,000) : and it is in this context that the court casually says, “We think it apparent that this provision [C.P. (1870) art. 684, the source of C.C.P. art. 2337] is designed solely for the protection of the preferred creditors. Consequently, since the highest bid for which the property was adjudicated was ample to discharge the mortgage which outranked the seizing creditor, it can hardly be said that *401 the sale is violative of Article 684." 102 So.2d at 470.
 Lambert’s dictum is quite understandable in its factual context. But an examination of prior jurisprudence shows that the courts have frequently recognized that the debtor can be injured by the improper sale and has a right to sue for nullity: and if the nullity is said to be relative rather than absolute, it is said to be a nullity relative to the debtor as well as to the superior creditor (and, one must suppose, the purchaser as well; see Trudeau v. McVicar, 1846, 1 La.Ann. 426, where the purchaser was allowed to annul for lack of price sufficient to pay the superior creditor).
A sheriff’s sale which does not produce a surplus over superior creditors’ claims “would be useless to the plaintiff, and oppressive to the defendant,” notes DeArmas v. Morgan, La.1825, 3 Mart.(N.S.) 604, 607, recognizing that the debtor has an interest in defeating such sales.
Whitehead v. Cramer, 1854, 9 La.Ann. 216, 218, observes:
“[T]he provisions of law on this subject were designed exclusively for the interest and protection of the defendant in execution and of mortgage creditors, [;] except in the intent [interest?] and for the protection of the owner of the property and those having real rights on it growing out of mortgages, no reason exists for a law prescribing that property seized in execution shall be sold under certain formalities and for a certain price. The pain of nullity which has been denounced when such requisites have not been complied with, has always been decreed in the interest of parties in that relation and as there exists no motive of public policy, nor any reason of public utility for the prohibition to adjudicate the property at Sheriff’s sale for less than the amount of the prior special mortgages, the nullity is only relative and cannot be provoked by any other persons than those in whose interest the prohibition was made.”
Walmsley v. Theus, 1901, 107 La. 417, 31 So. 869, 877, declares':
“. . . The right to raise the objection is not limited to the mortgage creditors prior in matter of rank of mortgage, but also includes the owner as one to whom the right is given to object. When the creditor is to take nothing from the proceeds, he is placed in the attitude of causing the sale of his debtor’s property to no purpose, in so far as he is concerned. This, the article of the Code [of Practice] on the subject, in effect, lays down, cannot be done; and, when it occurs, the owner of the property, ordinarily, is prejudiced, and can be heard.”
Other cases in obiter dicta have recognized the debtor’s right to annul; Lawrence v. Birdsale, 1851, 6 La.Ann. 688; Lane v. Cameron, 1884, 36 La.Ann. 773.[3]
Perry v. Holloway, La.1845, 10 Rob. 107, and Jure v. Balletin, 1851, 6 La.Ann. 394, both annulled adjudications on the petition of the debtor, on grounds of violation of the source statutes for C.C.P. art. 2337. In Perry, the debtor had made a cession to his creditors, and their syndic exercised the debtor’s right. In Jure, the formal sale after adjudication had not yet occurred. But in both cases, the debtor’s right of action was sustained.
However, here the superior mortgage creditor released its mortgage (insofar only as it affected the 11 lots sold) subsequent to the adjudication, and before the sheriff’s written act of sale. Defendants argue that the sale was therefore not in violation of C.C.P. art. 2337.
We deem the post-adjudication release immaterial. C.C.P. art. 2342 rules: “The *402 act of sale adds nothing to the force and effect of the adjudication, but is only intended to afford proof of it.”
 Finally we must add that, in any case, plaintiff has a right of action under R.S. 13:4106-13:4107, the Deficiency Judgment Act, on his demand for a declaration of extinction of “the collateral mortgage^] between [plaintiff’s corporation] and Jaxon.” Plaintiff’s prayer must properly be understood as for extinction of the debts formerly secured (ultimately) by those mortgages. (This prayer must also be considered an alternative to the demand for nullity: plaintiff cannot both annul the sale and accept its benefit.) Perhaps the petition fails to state a cause of action, or at least is vague, for failure to allege the sales were made without appraisal (as their prices of under $100 a lot suggest when compared to the building and loan association loan of over $1,000 a lot). But mere failure to state a cause of action, C. C.P. art. 934, and vagueness, art. 933, can be corrected by amendment.
Reversed.

. If the price offered by the highest bidder at the first or subsequent offering is not sufficient to discharge the costs of the sale and the mortgages, liens, and privileges superior to that of the seizing creditor, the property shall not be sold.

. The other lots subject to Causeway Mortgage’s mortgage were also subject to a mortgage in favor of Jefferson Savings and Loan Association. ' Jefferson had loaned $46,800 on all the lots together, but released the 11 at the time they were subjected to the collateral mortgages.

. In Lane the right to annul was refused a third possessor. The court reasoned that the third possessor could not conceivably benefit from the statutory provision since she neither owed the mortgage debts nor had any chance of retaining the property.