Robinson vs. Williams.

## No. 11,202.

### E. T. ROBINSON vs. T. J. WILLIAMS.

1. It appearing that in previous years the property had not been assessed *to any one*, and not being able to obtain from the conveyance records of the parish wherein the same is situated, or by inquiry of the adjacent property owners, who is the proprietor thereof, it is permissible for the assessor to list it as that of an unknown owner. Such an assessment is not absolutely void and is sufficient basis for a tax title that will support the prescription of three years under the act of 1874.

2. Want of thirty clear days' advertisement is an informality that is prescribed by five years.

A PPEAL from the Ninth District Court, Parish of Red River. *Hall, J.*

*Pugh & Wilkinson* and *Clegg & Thorpe* for Plaintiff and Appellant:

1. The assessment is the foundation of all that follows in a tax sale.

2. As the assessment stands in lieu of a judgment, and as if there be no assessment or judgment against the true owner, there can be no valid sale. 29 An. 509.

3. An assessment in the name of one not the true owner is not only an irregularity and informality, but is absolutely null and void. 32 An. 912; 15 An. 15; 19 An. 185; 26 An. 730; 28 An. 537; 8 An. 19.

4. The assessment is the very basis or foundation of the proceedings relating to tax sales, and has been very properly likened to a judgment, which must precede a sheriff's sale; and a proper and legal assessment is just as essential to the validity of the one as the existence of the judgment is to the validity of the other. 32 An. 925; 30 An. 176; 38 An. 400; 40 An. 455.

5. Where a vendor sells only his right or interest, shows what it is, and declines to warrant generally, this brings home to the vendee a knowledge of his title. 3 R. 220; 10 L. 284.

6. "A sale without warranty," says Marcadé, "is not properly the sale of the thing itself, but merely the pretensions and claims which the vendor may have upon the thing." 34 An. 651.

7. So, if the plaintiff could recover as against Lee, it is clear that he could recover as against the defendant.

8. The pleas of prescription of three and five years do not apply as a bar to an action to annul a tax sale, where the gravest irregularities and absolute nulli-

Robinson vs. Williams.

ties are propounded. 32 An. 912; 34 An. 409-707; 35 An. 1087; 29 An. 510; 43 An. 441; 38 An. 400; 40 An. 455; 4 So. Rep. 506.

9. A judge who should render a judgment without citation or hearing could hardly be permitted to hold property acquired in execution of said judgment. The same rule applies with greater force to an assessor.

10. "The general rule," says the Supreme Court of the United States, "stands upon the great moral obligation to refrain from placing ourselves in situations which ordinarily excite a conflict between self-interest and integrity." 4 How. 555.

11. A title absolutely null can not be the basis of prescription. 10 L. 552; 7 M. 379-406; 3 R. 223; 4 R. 201; 4 N. S. 224.

*J. C. Egan & Son* for Defendant and Appellee:

1. The only grounds of nullity and irregularity specially alleged in the petition, and which can be passed upon by this court under the pleadings, are want of advertisement for the time required by law and irregular assessment. 14 An. 778-9.

2. Want of advertisement for thirty clear days of property advertised to be sold for taxes is a relative nullity and such defect is cured by prescription of three and five years. 11 R. 537; 10 R. 398; 1 An. 777; Act of 1834 (re-enacted in 1855); 2 So. Rep. 809; C. C. 3543; 39 An. 1005; 3 So. Rep. 273.

3. The Constitution divides property into known and unknown owners. Advertisement is the mode of notice provided for unknown owners. There is no contention that this notice was not given in this way. But plaintiff contends the advertisement under which the sale was made was insufficient because the property was not advertised for thirty clear days.

4. An assessment containing a description sufficient to identify the property and not mislead the owner is all that the law requires. Cooley on Taxation, pp. 282-3; Blackwell on Tax Titles, p. 150, Sec. 136; 41 An. 769.

5. It was the assessor's duty to assess the land to an unknown owner when he could not find out by an examination of the records and by inquiry to whom the land belonged. Act No. 77 of 1882, Sec. 17.

6. A sworn officer is always presumed to have done his duty. 1 Hen., p. 490, Sec. 17.

7. When one by his silence, acts and conduct induces another to believe in a state of facts and to act thereon, he is estopped from enforcing any advantage thereby acquired. "*Qui tacit consentire videtur, qui potest et debit vœtur jubet, si non vetat.*" Story Equity Jurisprudence, Sec. 389; Cross on Pleadings, p. 76; 5 An. 108, 367.

8. A possessor in good faith is entitled to be reimbursed for the enhanced value of the property resulting from the improvements made by him and is not accountable for fruits. C. C. 508; 1 N. S. 408; 8 N. S. 609; 2 L. 104; 3 L. 534; 6 R. 192; 2 An. 259, 376; C. N. 555; 16 An. 85, 91, 243; 23 An. 138.

9. Good faith is always presumed in matters of prescription, and he who alleges bad faith in the possessor must prove it. C. C. 3481.

The opinion of the court was delivered by

WATKINS, J.    Plaintiff's action is one for the revocation of a tax sale, on the ground that same is absolutely null and void in several

respects—the defendant disavowing the badges of nullity assigned, averring his good faith, acquisition of the property, and supporting his title by the pleas of three and five years' prescription. In the alternative the defendant makes claim for the enhanced value given to the soil by reason of certain improvements he had placed thereon since his purchase, it having been in a State of nature at that time.

On the trial there was judgment in favor of the defendant, quieting him in his title, and the plaintiff has appealed.

The land in dispute is the northwest quarter of Section Eight (8), Township Twelve (12), North of Range Ten (10) West, containing one hundred and sixty (160) acres; and the plaintiff acquired it by inheritance from his deceased father, who had become the owner of it many years ago, and which, with other lands, composed what has since been known as the Willow Point plantation.

The contention of the plaintiff in respect to the alleged nullity of the sale of the land for taxes is that all the land that he inherited was duly and regularly assessed to his tutor, B. S. Dickson, and the taxes thereon regularly paid for all years prior to 1882, when the land in controversy " was assessed to *an unknown owner*; whereas, the judicial records, former assessments and maps of said parish indicated and showed your petitioner to have been the legal owner of said property.'' That at the time of said assessment, and long afterward, he was a minor and entirely ignorant of his property having been thus assessed. That on the 8th of May, 1883, the tax collector made a pretended sale thereof in satisfaction of said taxes, and adjudicated it to P. A. Lee and G. W. Cawthon—the former being the person who was the assessor, and made the assessment in 1882— and they executed a conveyance thereof to the defendant on the 16th of April, 1884, for the nominal price of one dollar per acre. That the sale of May 8, 1883, was not advertised for thirty clear days as the law requires.

Plaintiff's case must necessarily depend upon the solution of the two propositions: (1) the want of thirty days' advertisement of sale, and (2) the illegal assessment of *his* property as that of an *unknown owner*.

As affecting the question of rents and improvements, plaintiff avers that the defendant, Williams, was, at the time of his purchase from the adjudicatees, and had been for many years previously, well aware that said land belonged to petitioner, and of the nature and

origin of his title, and of the absolute nullity of the tax sale; and, notwithstanding said facts, he purchased same without warranty and within the year allowed by law for its redemption, and, consequently is a purchaser in bad faith, and liable for rents and revenues from the commencement of his possession.

*Per contra* defendant's contention is, that he purchased the property in good faith, for a fair price, and without any knowledge of defects, if such there were, in his vendors' title, averring himself to have been in actual occupancy and possession thereof since date of his acquisition to the full knowledge of the plaintiff.

Representing that, notwithstanding the fact of plaintiff being fully aware of his open, peaceable, public and unequivocal possession, and of his having cleared, fenced and cultivated the greater portion of the tract during the time that has intervened since the sale, he did not inform him of any claim or pretension of his own, but, on the contrary, remained silent and concealed the same, and thus induced him to incur heavy outlay and expense in making the aforesaid improvements; therefore defendant insists that he is equitably estopped from instituting or maintaining this action.

In respect to the nullity of the assessment, the representations of the defendant are to the effect that the assessment rolls of 1880 to 1885 show that the land in question was not carried upon the tax rolls as property of the plaintiff, and that in the judicial proceedings appertaining to the plaintiff's emancipation, and placing him in possession of his inheritance, same is not described as constituting a part thereof. That the assessment was correct and honest; but if it be in any respect erroneous, the fault is directly attributable to the plaintiff's tutor, who, in making a sworn statement of his ward's property in 1882, to serve as the basis of an assessment of that year, omitted therefrom any reference to the land in dispute.

The evidence abundantly shows that a tax title in due form was executed by the tax collector in favor of the adjudicatees on the 8th of May, 1883, to the property in dispute in satisfaction of the taxes due thereon for the year 1882, under an assessment to an *unknown owner*. That said title was duly recorded soon after in the proper book of conveyance records of the parish in which the property is situated. That the purchasers conveyed the property to the defendant by notarial act of date April 16, 1884, in consideration of $160 in cash, the deed expressly stipulating that the sale was made with

Robinson vs. Williams.

only such warranty or guarantee of title as they acquired under the tax sale of May, 1883. That at time of sale the property was in a state of nature, wholly unimproved, but soon after defendant's purchase he went into actual possession and made thereon extensive and valuable improvements, having reduced the greater part of it to cultivation at date suit was brought in January, 1891. That, notwithstanding plaintiff's minority at date of assessment, he became fully emancipated and entered into possession of his inheritance in 1884; and, in 1885, became aware that the disputed property was his, and in defendant's possession, but made neither protest or complaint prior to the institution of suit.

It further shows that the reason plaintiff, as a witness, assigned for not objecting to the defendant's possession was that the Citizens Bank held a large debt on his father's estate, and he did not care to become personally liable therefor; and inasmuch as that mortgage covered the land in dispute, such would have been the inevitable result of such a suit as this one, and hence he postponed acting until he could effect a compromise. The compromise with the bank was effected on December 15, 1890, only a few days prior to the institution of this suit—the mortgage indebtedness of plaintiff's father largely exceeding the value of the property in controversy.

It is upon this state of facts that the defendant urges his pleas of three and five years' prescription under the statute of 1874 in bar of plaintiff's action; and to which the plaintiff opposes the alleged nullity of the assessment, insisting that, inasmuch as an assessment stands in lieu of a judgment, there can be no valid sale in the absence of a valid assessment against the true owner of the property.

With reference to the assessment of 1882 the record discloses the following facts substantially, viz.:

That Major B. S. Dickson, tutor for the plaintiff, made out and furnished the assessor a list of the property of his ward for assessment, and thereto appended his oath. That the assessor placed upon the assessment roll of that year the exact description of the minor's property that was given to him by his tutor. That, in his opinion, said assessment was honest and correct to the best of his knowledge. And that when this assessment was made he had no knowledge of the plaintiff having any claim to the land in dispute.

That at that time there was no parish map showing the original land entries, or the names of the owners of land in the parish.

That the statements of Major Dickson were the only lights he had before him at the time of making the assessment of the property of the plaintiff. That he referred to back tax rolls to see if the list given in by Major Dickson compared with the back tax lists.

The assessor further states that it was his habit, in case of unknown owners, to search the records diligently, but that the records were in such a condition at that time in the parish of Red River that it was almost impossible to tell anything about them. That he knows that he searched the records in the present case, and made inquiries and tried to find out to whom the property in dispute belonged. That he made inquiries of parties who lived in the vicinity where the land was situated in order to find out to whom the same belonged.

Reference to back tax lists of former years discloses that the land in dispute appears upon an assessment of land *in the name of B. S. Dickson, Agent.* Likewise in 1878.

It is not included in the assessment of *B. S. Dickson, Tutor,* for either of the years 1880 to 1885 inclusive.

It is not included in the statement of property that was furnished as the basis of proceedings for plaintiff's emancipation in December, 1884, but it is included in the description of the property that was mortgaged by the plaintiff's father to the Citizens Bank in March, 1841—some ten years prior to his death.

This is the sum and substance of the evidence touching the validity of the assessment, of which complaint is made that it is and was an absolute nullity, because it was assessed to an unknown owner, instead of having been assessed to the plaintiff or his tutor.

It can not be readily perceived what more the assessor should have done or could have done under existing circumstances.

True it is that a description of this land appears in some of the ancient land titles of his father, and those of his authors, which appear of record in books of conveyances of the various properties that were taken from the adjoining parishes in the formation of the parish of Red River; but doubt has existed until recently as to whether same were efficacious evidences of title—this court having maintained the affirmative view in Parish Board, etc., vs. Edwington, 40 An. 633, the purport of which is that duly recorded *titles* can not be affected prejudicially by the transfer of the *property* from one parish to another.

But the mere fact of the registry of such titles in the new parish

being questionable is sufficient to relieve him of the charge of wrong-doing in failing to consult the records at his command—not taking into consideration the bad condition of even those records at the time of making the assessment.

Taken all in all, the facts make out a proper case for the prescription of three years, if they do not make out an absolutely perfect assessment and sale.

For it appears that in making the assessment of the property in dispute, the assessing officer had recourse *in vain* to the sources of information plaintiff mentions in his petition as exhibiting his title.

That, not being satisfied with not finding it assessed in the name of *any* one, he did not assess it to an *unknown owner* until after he had made diligent examination of the tax rolls of previous years and proper inquiry of adjacent property owners as to who was the proprietor, without avail.

That, notwithstanding the assessments of the plaintiff's property was made in 1882, as well as in prior and subsequent years, by the plaintiff's tutor, under oath, there is no trace of the land in dispute to be found thereon.

In addition to these salient facts, it further appears that, notwithstanding the plaintiff's minority at date of assessment, and the subsequent tax sale thereunder, he was fully emancipated shortly afterward and entered into possession and enjoyment of his inheritance; and subsequently became aware of the defendant's occupancy and improvement of the property in dispute, and thereafter continued to refrain from taking any steps looking to his divestiture of title or possession until he had succeeded in effecting a compromise settlement of the interfering Citizens Bank mortgage—his greater interest in protecting himself from the mortgage transcending his lesser interest in revoking defendant's title, thus clearly manifesting acquiescence for the full prescriptible period of three years.

The single circumstance of one joint purchaser at tax sale made in May, 1883, having been the person who made the assessment in 1882, presents no serious obstacle to the primary validity of the assessment or sale, for the reason that long prior to date of sale he had ceased to be assessor, and was not such officer at the time of adjudication.

The underlying principle contended for by the plaintiff being that " the policy of the law will not permit *an officer* to put himself in a

situation in which his *duty and interest* must necessarily conflict and be at variance.''

Mr. Justice Cooley puts the proposition thus:

'' No provision of law, it is assumed, would ever be made which would subject official integrity to the trial of such conflicts between interest and duty as would be sure to arise *if the officer were allowed to bid at a sale* when his duty would be to obtain the highest practicable bid in the interest of another. To put himself in that position is *regarded as a fraud in the officer* upon the law; and upon general principles of public policy, *the sale which he makes to himself is void.*'' Cooley on Taxation, p. 341.

Lee *was* assessor in 1882, but not in 1883. He made the assessment but not the sale. There is no proof in the record to that effect, and, in the absence of proof, we can not assume that at the time of the assessment the assessor *contemplated becoming a purchaser* at the sale that might be made in the future.

We have had occasion frequently to examine pleas of three years' prescription arising under the act of 1874, as applicable to actions for the annulment of tax sales, and an examination of the cases adjudicated will show that it has not been favorably considered or maintained in any case disclosing radical nullities in either assessment or sale. *Vide* Persons vs. O'Neal, 32 An. 228; Logue vs. Boagni, 32 An. 914; Davenport vs. Knox, 34 An. 409; Wederstrandt vs. Freyhm, 34 An. 705; Heckman vs. Dawson, 35 An. 1087; Surgett vs. Newman, 42 An. 777; Breaux vs. Negrotto, 43 An. 426; Prescott vs. Payne, 44 An. 650.

In each of the foregoing cases this court refused to maintain the plea, because of the existence of radical defects in either assessment or sale.

But on account of the absence of such defects it was maintained in Barrow vs. Wilson, 39 An. 403; in McDougal vs. Montlezun, 39 An. 1005, and in Smith vs. City, 43 An. 726.

This is evidently a proper case for the application of the principles announced in the cases last cited, and the district judge properly maintained defendant's plea of three years' prescription.

The prescription or five years is likewise good as to the want of full thirty days' advertisement—a mere irregularity, and not an absolute nullity of sale.

Judgment affirmed.