PROVOSTY, J.
Belzire Abshire Lege, widow of Alexander Lege, Jr., brings this petitory action against her brother-in-law F. D. Lege to recover the S. % of the N. E. % of section 10, township 12 south, range 3 east, parish of Yermillion. Defendant claims to have acquired plaintiff’s title at a sheriff’s sale made under a fi. fa.
The land in question belonged originally to Alexander Lege, Jr., husband of the plaintiff and brother of the defendant. It was sold at his succession sale, in 1873, to the plaintiff. The sale was on a credit; and plaintiff furnished her notes, for the price.
In 1875 the administrator of the succession of Alexander Lege, Jr., having died, the defendant succeeded him in office. In 1881 he filed an account of his administration. The notes given by plaintiff for the purchase price of the property had not yet been paid and, accordingly, figured on this account among the assets of the succession. Plaintiff filed an opposition to the account, claiming the widow’s $1,000 homestead, and opposing the claim of certain creditors. Her opposition was disallowed; and the account was homologated. A month or two thereafter a fi. fa. issued against her on this judgment of homologation, and the property now in controversy was seized and advertised to be sold. Whether it was ever sold is a disputed point in this suit. The written evidence by which such a fact would ordinarily be proved is not available for the reason that the courthouse was destroyed by fire, with all its records, except fragments that were rescued in a half-burnt condition.
A copy of the official journal containing the advertisement is produced; hence there can be no serious dispute but that there was a fi. fa. and an advertisement. But, upon the question of whether the sale did actually take place, defendant has nothing but his testimony. He is corroborated by the fact that he took possession at that time and has continued in possession up to the filing of this suit in May, 1910, without any claim or protest from plaintiff of any kind or from anybody for her; furthermore, the plaintiff has not gone upon the stand on her own behalf.
Ordinarily these facts would be conclusive; but they lose most, if not all, of their significance under the peculiar circumstances of the case. Two witnesses testify that on the *257 day when the sale was advertised to take place they went to the courthouse, where it was to take place, with the intention of buying, and remained there all day, and that no sale took place. Another witness testified that he came to the courthouse to bid on the property, and that the sheriff not being there, he sent to the latter’s house to inquire of him touching the sale, and that after his conversation with Mm he (the witness) went home. Objection was made to his repeating what the sheriff had told him as being hearsay and was sustained; whether properly or improperly it is needless for us now to consider. Defendant says tha^no one was in possession of the property when be took it; that the plaintiff had abandoned it long before he had it seized, as she considered that she had lost it by reason of the adverse judgment on her opposition to his (the witness) account as administrator Of the succession of her husband. Another witness testifies that the plaintiff was at that time living in his house and maritally with him, though without marriage, and that they continued so to live together for 20 years and had three children, but that at the time of his testifying they had been separated for more than 15 years. The defendant, although at that time administrator of a succession and deputy sheriff, could not read. The three witnesses who testified for plaintiff could not read. The plaintiff made her mark to her act of purchase, which would indicate that she too could not read. The land was at that time of no great value; it having been adjudicated to plaintiff at $200, all on a credit, and of that price she had paid no part. Under these circumstances, we strongly suspect that plaintiff, living out in the country, poor, uneducated, and inexperienced, knew little of what the legal situation was with reference to the right of the defendant, a deputy sheriff and the administrator of the succession, to take this land (she not having paid any part of the price), and that her acquiescence has no very great significance.
When plaintiff sought to cross-examine defendant on the points of whether, if there had ever been such a sale, he had paid the price of it, and whether he had ever filed any final account of his administration, or had ever settled with the heirs, objection was made and sustained on the ground that the plaintiff had not alleged the nullity of the sale in her petition, and that therefore the matters thus inquired about were irrelevant.
The son of plaintiff testified that on the advice of counsel he went to defendant and inquired of him by what right he claimed this land, and that defendant’s answer was that he had acquired it at the succession sale of Alexander Lege, Sr. Defendant denies having made any such statement.
From the foregoing evidence it would be difficult to come to any positive conclusion upon the question of whether there was or not a sale; but the evidence shows conclusively that if there was one it was made under a fi. fa. predicated upon the homologation of an administrator’s account, and not upon a money judgment against the plaintiff, and that, therefore it was null and void. On that point the defendant testified as follows:
“Q. You say that as administrator of the estate of Alexander Lege, Jr., you obtained a judgment against Mrs. Belzire Abshire on the three notes secured by vendor’s lien bearing on the property bought by her at the succession of her husband; now please state when you obtained that judgment?
“A. In the latter part of ’81.
“Q. Did you sue Mrs. Belzire Abshire on these notes?
“A. When I made my tableau I charged her for what she had bought at sale; she had a claim of $1,000. I then charged her on for what she had bought at the sale; then she brougnt the opposition; and then the judge rendered a judgment homologating the tableau for the amount she was owing to the estate.
“Q. If I understand you, then you obtained no judgment against her but caused a writ of fi. *259 fa. to issue simply because the judge bad homologated and approved your tableau as administrator?
“A. Yes, sir. After the judge homologated my tableau, there was a judgment; my lawyer went on and had writ of fi. fa.
“Q. Mr. Lego, if I understand correctly that testimony you gave in your direct examination, you claimed this: That as administrator.of the estate of Alexander Lege, Jr., you filed a tableau, and on that tableau was listed the indebtedness of Belzire Abshire to the estate, which indebtedness was represented by three vendor’s lien notes given as the purchase price of the tract of land involved in this suit, and that Mrs. Belzire Abshire, widow of the deceased, filed an opposition to your tableau, which opposition was dismissed by judgment of court, and there was judgment homologating the tableau as filed, and that upon this judgment homologating the tableau you caused a writ of ii. fa. to issue, and under the writ the sheriff advertised and sold the property described in the notice of seizure and sale published in the newspaper filed in evidence as document ‘F,’ and on the day of sale you purchased the property. Please state if the foregoing statement of my understanding of your evidence is correct?
“A. Yes, sir.”
And in the answer the following averment is made:
“Respondent avers that in the year 1881 a judgment was rendered by the said Twenty-Fifth judicial district court in the matter of the succession of the said Alexander Lege, Jr, homologating the ‘tableaux of debts and charges and of provisional settlement’ filed in said estate by the administrator thereof, upon which tableaux plaintiff herein was charged with the purchase price of 'her aforesaid purchase and other purchases as a debtor of said estate, said purchases having been made on terms of credit, and that said proceedings were carried on and said judgment rendered contradictorily with said Belzire Abshire, the plaintiff herein, who was a party thereto, as will be shown on the trial-hereof.”
[1,2] An administrator’s account is not a judicial demand against those debtors of the succession whose debts, whether represented by notes or otherwise and whether due for the price of property purchased from the succession or for any other cause, figure upon the account among the assets of the succession; and the homologation of such an account cannot possibly constitute a judgment against such debtors; and therefore no fi. fa. can issue upon such a judgment against any of these debtors. Any such fi. fa. would be a mere idle form, without legal life; and any sale made under it would in like manner be a mere idle form without any legal life. And, even though such a thing were possible as that a third person purchasing at such a sale might acquire some rights (by estoppel or otherwise), the plaintiff in the writ, responsible for its issuance, could certainly not acquire any. He could not acquire any even by the prescription of ten years, for he would be charged with legal knowledge of the utter nullity of his title and therefore could not possibly be in good faith. The defendant has therefore no title.
And the decisions in Capdevielle v. Erwin, 13 La. Ann. 286,'Tanneret v. Edwards, 18 La. Ann. 606, In Matter of Succession of Conrad, etc., 45 La. Ann. 89, 11 South. 935, Succession of Allen, 49 La. Ann. 1096, 22 South. 319, Durham v. Williams, 32 La. Ann. 968, have nothing in opposition to this. Their doctrine is simply that such judgment of homologation fixes the amount due by the administrator or the executor, who has filed the account, to the creditors of the succession, and is res judicata in that regard, and constitutes a money judgment against the succession in favor of the creditors and against the accountant in favor of the heirs. This is very different from saying that it operates as a judgment against the debtor of the succession whose notes or other debts may have figured among the assets of the succession.
’ [3] In her petition the plaintiff simply set up her title acquired from the succession of her husband and prayed to be recognized as owner and to be.put in possession. She did not impugn the validity of the sale under which the defendant claims title. She could not well impugn the validity of a sale of which she denied the existence. But, when the defendant set up this sale in his answer, she had the clear and perfect right to urge against it every objection of law or fact she *261 might have without pleading same; replication not being allowed under our law. Hennen Digest, p. 1155, -No. 1.
[4, 5] Plaintiff alleges that the defendant was a possessor in bad faith, and she claims rents and revenues from him. Inasmuch as the null and void fi. fa. was issued at his own instance, he was clearly a possessor in legal bad faith; and this makes him liable for fruits and revenues. But plaintiff has not proved her demand for these fruits and revenues, and therefore must be nonsuited upon it. She sought to do so only as part of her rebuttal evidence, and objection was properly made and sustained that the evidence was not in rebuttal of any evidence that defendant had offered and was therefore inadmissible.
[6] The children of plaintiff, as heirs of their father, Alexander Lege, intervened in the suit, claiming that this property was never sold to their mother at the succession sale of their father, and that therefore, as heirs of their father, they are the owners of it. We gather that as between them and their mother the litigation is friendly, and that their claim is set up merely for the purpose of seeking to take advantage of a defect in the description by which the adjudication to their mother was made, which defect was reproduced in the description in the advertisement of the sale under which defendant claims. In both cases the description read,
“The S. y2 of the N. E. % of section -, township 12, range 3 east, parish of Vermillion”; that is to say, the number of the section was left blank.
Defendant properly contends that this defect is harmless, since the evidence shows that the succession of Alexander Lege, Jr., owned no other land in the parish of Vermillion than the S. y2 of section 10, range 12. See In re Perrault’s Estate, 128 La. 454, 54 South. 939; Weber v. Martinez, 125 La. 663, 51 South. 679.
It is therefore ordered, adjudged, and decreed that the intervention of the heirs of Alexander Lege, Jr., be dismissed, at their costs; that the judgment appealed from be set aside; that the plaintiff Belzire Abshire Lege have judgment against E. Despane Lege, decreeing her to be the owner of the property hereinabove described, and ordering her to be placed in possession of same; that her demand for rents and revenues be dismissed as in ease of nonsuit; and that defendant pay all costs.