COLE, Judge.
Plaintiff-appellee, Jasper J. Pirello, filed this action to annul a tax sale of certain immovable property to defendant-appellant, Triangle Enterprises, Inc. In lieu of trial, the parties entered into a stipulation of facts with attendant exhibits. The case having been submitted thusly, the trial court, for written reasons assigned, rendered judgment in favor of appellee, annulling and setting aside the tax sale on the ground that a partial payment of the taxes due on the property had been made prior to the sale. The court further decreed the return of all taxes, interest and costs paid by appellant on the property, together with legal interest thereon. From this judgment, the instant appeal was taken.
The following facts have been stipulated by the parties. Prior to July 1,1976, appel-lee, Jasper Pirello, was the owner of Lots 57, 58, 59, 60, 61, 62, 63, 64, 65, 76, 77, 78, 79, 80, 81, and 82 in Cambre Place Subdivision in Ascension Parish. Despite the fact that Lot 76 was purchased by a Mr. Henry Joiner on July 1, 1975, taxes for 1975 were assessed on all sixteen (16) of these lots, including Lot 76, under a single assessment (No. 10017) in appellee’s name. The amount of these taxes was $37.80. After *524 appellee failed to timely pay these assessed taxes, all sixteen (16) lots were advertised for tax sale. Thereafter, Henry Joiner paid the Sheriff of Ascension Parish $7.09 for the sums purportedly due on Lot 76. Of this amount $2.36 (one-sixteenth of $37.80) was allocated for taxes with the balance representing interest and costs. Joiner was given receipt numbered 10017-A, issued by the Sheriff in the name of Jasper J. Pirello, “C/O Henry Joiner.”
In 1975, ten of the lots included in the single assessment were unimproved properties. The remaining six lots were improved in that each had constructed thereon an unfinished house. The unimproved lots, including Lot 76, had a market value of $1,000 each and the improved lots had a market value of $3,500 each. The 1975 assessment roll for the Parish of Ascension ascribed a single value of $800 for all 16 lots. In describing the property, this document does not indicate that any of the 16 lots were improved. In other instances the assessment roll noted the value of the land and the value of the improvements separately. The combined valuation was then carried over under a column designated “Actual value of all lands, lots or parcels of land and all improvements thereon.... ”
Appellant was the successful bidder at the tax sale held on April 7, 1976. The six improved lots and nine of the unimproved lots were conveyed to appellant by virtue of a properly executed tax deed. Appellant paid $35.44, plus interest and costs, for the conveyance. This represented fifteen-sixteenths of the advertised amount of taxes due on all 16 lots. Lot 76 was not included in the tax sale.
The principal issue presented, under the above established facts, is whether or not the payment by Henry Joiner of the taxes purportedly due on one of sixteen (16) lots assessed under appellee’s name, without first obtaining an assessment certificate as required by La.R.S. 47:2179, constituted a partial payment of the total amount of taxes due on all the property included in the assessment.
There is a long line of jurisprudence, acknowledged by both parties, and relied upon by the trial judge in his opinion, that a tax sale for taxes which were partially paid prior to the sale is null. Mecom v. Graves, 148 La. 369, 86 So. 917 (1921); Thompson v. Sanders-Lenahan Lumber Co., 147 La. 860, 86 So. 310 (1920); Doullut v. Smith, 117 La. 491, 41 So. 913 (1906); Harris v. Deblieux, 115 La. 147, 38 So. 946 (1905); Verret v. Norwood, 311 So.2d 86 (La.App. 3d Cir. 1975), writ refused 1975; LaCaze v. Boycher, 80 So.2d 583 (La.App. 1st Cir. 1955); Prampin v. Southern Chemical Works, 53 So.2d 210 (La.App.Orl.1951). It is for this reason that a determination as to whether or not such a partial payment occurred in the instant case is necessary. This determination hinges upon consideration of La.R.S. 47:2179.
La.R.S. 47:2179 provides:
“In all cases where two or more lots or parcels of ground shall have been assessed in any year or years to one person or firm at a certain valuation for the whole together without distinguishing the valuation of each lot or parcel separately, the tax collector is authorized to receive the proportion of taxes under assessment fairly due upon any one or more of such lots or parcels separately, such proportions to be ascertained and fixed by a certificate signed by the assessor and approved by the tax collector. Such lots or parcels upon which their proportions shall be so paid shall be free from the proportion of taxes pertaining to the other lots or parcels of such assessment.” (Emphasis added.)
It is stipulated the certificate required by La.R.S. 47:2179 was not provided when Henry Joiner sought to pay “the proportion of taxes under assessment fairly due” upon Lot 76 which he had purchased from appel-lee. It is obvious the tax collector (Sheriff) took it upon himself to prorate the taxes by simply dividing the total assessment by the number of lots.
Where the statutory provisions are followed, a pro rata payment of the taxes due on a specific lot or parcel of property *525 cannot be considered a partial payment on the total amount of taxes due under the assessment. Since it is undisputed La.R.S. 47:2179 was not followed in the present case, in that the assessment certificate was not obtained, it is necessary to consider the effect, if any, this non-compliance with the statute had on the subsequent tax sale of the 15 lots to appellant. The statute itself provides no express sanction for non-compliance.
The position taken by appellee, as well as by the trial court, is that any payment of taxes not made in compliance with La.R.S. 47:2179 is to be considered a partial payment of the total amount of taxes due under the assessment, rather than a pro rata payment of taxes for a specific lot only. The basis of this argument is that, since La.R.S. 47:2179 provides the only authorization for pro rata payment of taxes on lots assessed together, there can be no such payments except in compliance therewith. Any other payment, regardless of the intent of the party making it, must therefore be regarded as a partial payment of the total amount of tax due on all of the property assessed together. Accordingly, the payment of taxes on Lot 76 by Henry Joiner was construed by the trial court to be a partial payment of the taxes due on all 16 lots assessed to appellee.
We quote with approval the following portions of the excellent reasons given by the trial judge.
“[T]he court finds that since the requirements of La.R.S. 47:2179 were not complied with, the tax sale must be set aside. As previously indicated, the law is clear that a tax sale made for taxes a part of which have been previously paid is an absolute nullity. Even though it is evident that Henry Joiner intended to pay only the taxes due on Lot 76 when Joiner appeared at the Sheriff’s office to pay the taxes he paid, the written law was not followed. The tax Collector (Sheriff) had no authority to determine that the taxes due on Lot 76 were $2.36. He only had authority to collect the taxes due as determined by the Assessor and the Louisiana Tax Commission. Actually if La.R.S. 47:2179 would not be in existance, the court knows of no procedure Joiner could have followed to pay the taxes due on Lot 76 without paying the entire amount due on all sixteen lots. La.R.S. 47:2179 clearly set forth the procedure to be followed in cases such as the case at bar when an individual wants to pay the taxes due on one specific piece of property which has been assessed jointly with other property. Since the procedure is clearly set forth in the law, it must be precisely followed. Otherwise, La.R.S. 47:2179 would have no purpose or meaning. In this case, the Sheriff accepted payment of $2.36 in taxes from Joiner. Since the certificate required by La.R.S. 47:2179 was not obtained by the Sheriff prior to his accepting the payment from Joiner, the payment by Joiner can only be considered a partial payment on the entire amount due on all sixteen lots. Hence, part of the taxes due on the property sold to defendant was paid prior to the tax sale. The sale must therefore be set aside and annulled. The plaintiff has met the burden of proof imposed upon him in this case.”
“[T]o determine that $2.36 in taxes was due on Lot 76, the Sheriff simply divided the total taxes ($37.80) due on all sixteen lots by sixteen. The evidence, as stipulated by the parties, was undisputed that there were partially constructed houses on six of the lots, whereas Lot 76 was vacant at the time the 1975 taxes were assessed. Under the law, the Assessor is required to consider the value of the land and improvements thereon when assessing property for tax purposes (See La. R.S. 47:1978) [sic[1] ]. The Court assumes that the Assessor did in fact make these considerations in arriving at the total assessed value of the sixteen lots assessed jointly. There therefore seems to be a serious question whether the taxes due on Lot 76 is actually one-sixteenth of the total amount due and whether the proration made by the Sheriff was ‘fairly’ *526 done. The taxes due on Lot 76 could have been more or, more likely, less than the amount actually determined by the Sheriff. Nevertheless, that decision was for the Assessor and the Louisiana Tax Commission to make rather than for the Sheriff and unless and until the certificate required by La.R.S. 47:2179 is obtained from the Assessor and approved by the Sheriff, any payments made and accepted by the Sheriff can only be considered a partial payment of the entire taxes due, rendering; any subsequent tax sale that takes place null and void.”
In line with the reasoning of the trial court, we observe the stipulated market value of all sixteen lots in 1975, including the improvements on six of them, was $31,000. Lot 76, having a market value of $1,000, represented 3.23% of the total value. This means a fair share of the taxes (3.23% of $37.80) for Lot 76 would have been $1.22. Henry Joiner actually paid $2.36. Based upon the stipulated values, this resulted in an overpayment of $1.14 which may logically be considered a partial payment of the taxes due on the remaining property.
There is a general presumption that public officials properly carry out their duties. While it may be presumed a tax sale would not be made had taxes been paid, it may also be presumed, as was here done by the trial judge, that the assessor in this instance considered the value of both the land and the improvements in arriving at the single assessed value of all the properties. See, Verret v. Norwood, supra; Staring v. Grace, 97 So.2d 669 (La.App. 1st Cir. 1957); Wright v. Cyprian, 96 So.2d 882 (La.App. 1st Cir. 1957). La.R.S. 47:1958 provides the assessor shall take into consideration the enhanced value of lots arising from the buildings and improvements thereon. This mandated duty gives rise to the aforesaid presumption and further validates the need to have the assessor sign the certificate required by La.R.S. 47:2179. This certification of the proportion “fairly due” upon any one lot when several are assessed as a whole protects both the taxpayer and the public. Further protection of the public fisc is afforded by requiring the tax collector (Sheriff) to approve the certificate. Hence we believe compliance with the requirements of La.R.S. 47:2179 is essential to avoid the equation of a tax payment intended for a single piece of property with the partial payment of taxes upon the remaining properties, all collectively assessed. Non-compliance would, therefore, result in the nullity of a tax sale such as is now before the court.
In support of the opposing position, appellant, while admitting the legal question presented is res nova in Louisiana jurisprudence, cites the cases of Thompson v. Sanders-Lenahan Lumber Co., supra, and Mansfield Hardwood Lumber Company v. Butler, 234 La. 322, 99 So.2d 129 (1958). Mansfield involved neither a “partial payment” of taxes nor the effect of non-compliance with La.R.S. 47:2179. The court, in Mansfield, did place emphasis upon the intention of the party making a tax payment but the absence of factual correlation precludes it as authority upon which appellant might rely.
Thompson, at first blush, does present support for appellant’s position. However, after a careful scrutiny of this 1920 opinion of our Supreme Court, we are unable to tell from the facts whether or not there was additional evidence before the court upon which it based its conclusion that none of the payment made related to taxes for which the property was thereafter sold. The stated facts strongly suggest such additional evidence was considered. To further complicate an understanding of Thompson, the court in that case was faced with the constitutional prescriptive period for bringing such an action. The holding that the action was barred by prescription left as uncertain the effect of non-compliance with the predecessor statute of R.S. 47:2179.
Thompson’s language, in construing similar facts, does negate partial payment of taxes in the instant matter. However, in Thompson, there is no explanation of how the various tracts of land were described or of the reasons why the tax amount allocated to the property sold was grossly disproportionate to the amount paid upon the *527 property not sold. The property in contest consisted of several tracts of land supposed to contain 1,180 acres. The total acreage assessed under a single assessment was 6,680 acres, including the 1,180 acres in contest. An unknown person paid $372.90 of the $533.94 due upon the entire 6,680 acres. The $372.90, therefore, represented a payment allocated to 5,500 acres which were not sold. This left, though unstated in the opinion, the sum of $161.04 which had to be due upon the 1,180 acres. The acreage sold represented 17.66% of the total acreage. The taxes allocated to the acreage sold represented 30.16% of the total taxes due. The converse is that the acreage unsold represented 82.34% of the total; and, the taxes paid on that land represented only 69.84% of the total taxes due. From these facts it is easy to see how the court could conclude there was no previous payment of any part of the taxes for which the 1,180 acres were thereafter sold. Unlike the present case, the facts in Thompson strongly suggest an underpayment of taxes on the part deleted from the tax sale. In any event, in Thompson, the question of whether or not there was a partial payment of the taxes for which the property was later sold was treated as a factual one. In the instant matter it can be demonstrated that such a partial payment was made, whereas in Thompson the facts demonstrate an opposite result. We do not believe the court in Thompson intended to reach the question of whether or not non-compliance with the statutory requirement of having the certificate issued did, as a matter of law, convert the payment intended for certain acreage into a partial payment on all the property included in the single assessment. Here, we do answer the question in the affirmative but even if we treat the subject matter in a purely factual sense, we still find a “partial payment” was made.
Appellant further relies upon Section 25(C) of Article 7 of the 1974 Louisiana Constitution which, in part, provides:
“The fact that taxes were paid on a part of the property sold prior to the sale thereof .. . shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid.”
This provision of our constitution does not address the situation where part of the taxes were paid on all of the property sold. As we have seen, such is the factual situation now before us. Because all of the sixteen lots were under one assessment, the payment received by the sheriff cannot be said to be due for taxes “on a part of the property.” There was no separate assessment or taxes fixed for any one of the lots. This could only have been accomplished by invoking the provisions of La.R.S. 47:2179. Appellant argues from the erroneous premise that there was a payment of taxes only on Lot 76, which was not a part payment of taxes on all of the lots. As pointed out by appellee, there is a world of difference between a payment of the taxes on a part of the property, that is, one lot, and a part payment of the taxes on all sixteen lots. We find the purpose of the quoted constitutional provision is to validate the sale of property upon which all of the applicable taxes were clearly unpaid. It contemplates an assessment posture which permits a distinction to be made among respective properties and also among the tax sums which are individually applicable to the various property entities. The provision is clearly inapplicable to the factual context now before us.
Appellee challenges alternatively the advertisement of his property for tax sale as being defective thereby justifying annulment of the sale on this additional basis. The advertisement listed all sixteen of the lots even though Lot 76 was not to be sold because the taxes thereon were considered paid. This resulted in an advertised amount of $37.80 for the single assessment. However, based upon Henry Joiner’s payment, the lesser amount of $35.44 was considered due. We do not find it necessary to rule on the validity of this contention, having already determined the tax sale must be set aside on the basis of partial payment of the taxes. We do note that any difference in the amount advertised and the amount *528 actually due must be substantial before the sale can be rendered a nullity. See, Lee v. Wood, 44 So.2d 349 (La.App. 1st Cir. 1950).
For the foregoing reasons, we affirm the judgment of the trial court. Appellant is to pay all costs of this appeal.
AFFIRMED.

. La.R.S. 47:1978 is incorrectly cited. The trial court undoubtedly meant La.R.S. 47:1958.